## C & J BUILDERS AND REMODELERS, LLC *v.* EMILE J. GEISENHEIMER ET AL. (SC 16004)

Callahan, C. J., and Berdon, Norcott, Katz and McDonald, Js.

Argued March 18—officially released June 29, 1999

*Patrick M. Noonan*, for the appellants (defendants).

*Michael J. Barnaby*, for the appellee (plaintiff).

CALLAHAN, C. J. General Statutes § 52-410 (a) provides in relevant part that "[a] party to a written agreement for arbitration claiming the neglect or refusal of another to proceed with an arbitration thereunder may make application to the superior court . . . for an order directing the parties to proceed with the arbitration in compliance with their agreement. . . ." The issue in this appeal is whether the plaintiff, C & J Builders and Remodelers, LLC, is a party to an arbitration agreement with the defendants, Emile J. Geisenheimer and Susan Geisenheimer, and, therefore, properly may seek an order directing the defendants to proceed with arbitration.

The underlying facts and procedural history are undisputed. On March 14, 1996, the defendants entered into a construction contract with Charles Pageau doing business as C & J Builders (sole proprietorship), for the renovation of the defendants' summer residence located in Madison. The parties initially set the contract price at $267,000 and subsequently agreed on further renovations. The contract included a provision that required the parties initially to refer any disputes arising out of the contract to Duo Dickinson, an architect who had been involved in the renovations. In the event that either party was dissatisfied with Dickinson's decision, that party then could submit a written demand to compel a formal arbitration proceeding.

On October 24, 1996, Pageau, pursuant to General Statutes § 34-120 and General Statutes (Rev. to 1997) § 34-121,[1] filed an operating agreement establishing the

---

[1] General Statutes § 34-120 provides: "One or more organizers may form a limited liability company by signing and filing articles of organization with the Secretary of the State. The organizer or organizers need not be members of the limited liability company at the time of formation or after formation has occurred. The organizer or organizers shall prepare a writing to be held with the records of the limited liability company, setting forth: (1) The name

plaintiff, C & J Builders and Remodelers, LLC. Pageau then ceased doing business as the sole proprietorship and began conducting his construction operations as the plaintiff, a limited liability company. The plaintiff assumed virtually the same name as Pageau's sole proprietorship; it operated at the same business address; and it carried on the business operations of the sole proprietorship. Specifically, the plaintiff continued the renovations to the defendants' summer residence pursuant to the contract that the defendants had entered into with the sole proprietorship. Moreover, the plaintiff's operating agreement states that it is the "successor to Charles Pageau [doing business as] C & J Builders and Remodelers." The operating agreement further provides that Pageau maintains a 99 percent ownership interest in the plaintiff, and that he exercises virtually

and residence address of each person who has become an initial member of the limited liability company; and (2) if the articles of organization provide that the management of the limited liability company is vested in a manager or managers, the name and residence address of each initial manager. The organizer or organizers shall have no obligation to make filings with the Secretary of the State identifying the members or any managers, but the limited liability company shall maintain, pursuant to subsection (a) of section 34-144, a record of the members and any managers."

General Statutes (Rev. to 1997) § 34-121 provides: "The articles of organization of a limited liability company formed under sections 34-100 to 34-242, inclusive, shall set forth: (1) A name for the limited liability company that satisfies the requirements of section 34-102; (2) the latest date upon which the limited liability company is to dissolve; (3) if management of the limited liability company is vested in a manager or managers, a statement to that effect; (4) the nature of the business to be transacted or the purposes to be promoted or carried out, except that it shall be sufficient to state, either alone or with other business or purposes, that the purpose of the limited liability company is to engage in any lawful act or activity for which limited liability companies may be formed under sections 34-100 to 34-242, inclusive, and by such statement all lawful acts and activities shall be within the purposes of the limited liability company, except for express limitations, if any; (5) the principal office address of the limited liability company; (6) an appointment of a statutory agent for service of process as required by section 34-104; and (7) any other matter the organizer or organizers determine to include." Subdivision (2) of § 34-121 was deleted by Public Acts 1997, No. 97-70, § 4.

absolute control over the plaintiff's business operations.

In June, 1997, a dispute arose regarding $87,667.12 that the plaintiff claimed was owed on the contract. Thereafter, the plaintiff referred the dispute to Dickinson and forwarded documentation supporting its claim. Dickinson agreed to render a decision after the defendants had submitted documentation contesting the plaintiff's claim. The defendants, however, did not submit any documentation to Dickinson, and consequently, he refused to render a decision in the matter. The plaintiff then submitted to the defendants a written demand for formal arbitration. The defendants, however, did not comply with that demand.

Thereafter, the plaintiff, pursuant to § 52-410, filed an application in the trial court seeking an order directing the defendants to submit to arbitration. The defendants, however, filed a special defense, claiming that the plaintiff was not a party to their contract with the sole proprietorship, and, therefore, that the plaintiff was not entitled to compel the defendants to arbitrate the dispute. The trial court, however, concluded that the plaintiff was entitled to enforce the contract and ordered the defendants to submit to arbitration. The defendants subsequently appealed from the trial court's judgment to the Appellate Court. We transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

On appeal, the defendants claim that the trial court improperly concluded that the plaintiff is entitled to compel arbitration pursuant to § 52-410. The plaintiff, however, contends that it is the "successor in interest" to the sole proprietorship and, as such, has assumed the rights and obligations of its predecessor by operation of law. Consequently, the plaintiff maintains that it is

entitled to compel arbitration. We agree with the plaintiff.

We previously have stated that "the term successor in interest ordinarily refers to a corporation that by a process of amalgamation, consolidation or duly authorized legal succession, has become invested with the rights and has assumed the burdens of [another] corporation . . . ." (Citation omitted; internal quotation marks omitted.) *Bouchard* v. *People's Bank*, 219 Conn. 465, 472, 594 A.2d 1 (1991). The plaintiff concedes that the issue in the present case, namely, whether a limited liability company may assume, by operation of law, the interests and obligations of a sole proprietorship is not resolved explicitly by our definition of "successor in interest." Nevertheless, the plaintiff urges that we apply the "successor in interest" concept in the present situation.

We previously have not considered whether the transformation of a sole proprietorship into a limited liability company creates in the new business entity rights and obligations previously held by the sole proprietorship. Our resolution of this issue is guided by reference to relevant provisions of the Connecticut Limited Liability Company Act (act), as codified by General Statutes §§ 34-100 through 34-242. Although we recognize that the provisions of the act do not control the outcome, it is well established that "statutes are a useful source of policy for common-law adjudication, particularly when there is a close relationship between the statutory and common-law subject matters." *DeMaria* v. *DeMaria*, 247 Conn. 715, 721, 724 A.2d 1088 (1999); *Fahy* v. *Fahy*, 227 Conn. 505, 514, 630 A.2d 1328 (1993); see also *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 580–86, 657 A.2d 212 (1995); *New England Savings Bank* v. *Lopez*, 227 Conn. 270, 281–82, 630 A.2d 1010 (1993); *Olean* v. *Treglia*, 190 Conn. 756, 762, 463 A.2d 242 (1983); *Conference Center Ltd.* v. *TRC*, 189 Conn.

212, 225, 455 A.2d 857 (1983); *Hamm* v. *Taylor*, 180 Conn. 491, 494–95, 429 A.2d 946 (1980). "Statutes are now central to the law in the courts, and judicial law-making must take statutes into account virtually all of the time . . . . Hardly ever is a statute now regarded as a candidate for narrow construction because it may be in derogation of the common law. More often, the issue is rather to what extent a statute *is itself a source of policy for consistent common law development.*" (Emphasis added.) E. Peters, "Common Law Judging in a Statutory World: An Address," 43 U. Pitt. L. Rev. 995, 998 (1982); see generally J. Landis, "Statutes and the Sources of Law," Harvard Legal Essays (R. Pound ed. 1934) p. 213; G. Calabresi, A Common Law for the Age of Statutes (1982). We consider this adjudicative technique to be appropriate in the present case.[2]

We focus our analysis on General Statutes § 34-200, the statute that governs the effect of the conversion of a general or a limited partnership to a limited liability company. Specifically, § 34-200 (a) provides that "[a] general or limited partnership that has been converted to a limited liability company pursuant to section 34-199 *shall be deemed for all purposes the same entity*

---

[2] In applying this adjudicative technique, we previously have stated that "every statute has some boundaries, and the question then arises whether, and when, it is appropriate to apply the statute, as a matter of common law, beyond its designated boundaries. E. Peters, [supra, 43 U. Pitt. L. Rev. 1005]." (Internal quotation marks omitted.) *Williams Ford, Inc.* v. *Hartford Courant Co.*, supra, 232 Conn. 585. Moreover, "[i]t is true that, in interpreting statutes we have on occasion read specific statutory references to indicate a legislative intent to exclude, by implication, other related potential referents. . . . Furthermore, if in this case either the explicit language or the legislative history of [§ 34-200] had indicated such a legislative intent, we would be required to respect that implication, and we would be precluded from reaching a result by way of common law adjudication that was contrary to that intent. Neither the statutory language nor that legislative history, however, indicates such an intent." (Citation omitted; internal quotation marks omitted.) Id., 584–85.

*that existed before the conversion,* except that the converted entity, its members and managers shall be governed solely by the provisions of sections 34-100 to 34-242, inclusive." (Emphasis added.) Moreover, subsection (b) of § 34-200 provides that upon conversion of a general or limited partnership to a limited liability company, "[a]ll property owned by the converting general or limited partnership remains vested in the converted entity . . . [and] . . . all obligations of the converting general or limited partnership continue as obligations of the converted entity . . . ." Thus, § 34-200 expressly provides that the actual business operations of the converting partnership are not affected by the conversion, and that all of the converting partnership's property and obligations are transferred to the newly converted limited liability company by operation of law. In effect, § 34-200 treats the converted limited liability company as the "successor in interest" to the converting partnership.

In addition, § 34-200 (b) further provides: "(3) an action or proceeding pending against the converting general or limited partnership may be continued as if the conversion had not occurred; (4) an action or proceeding pending against any person in such person's capacity as a general partner in a converting general or limited partnership may be continued as if the conversion had not occurred; and (5) all liabilities of any person in such person's capacity as a general partner in a converting general or limited partnership . . . shall continue as liabilities of such person . . . ." Consequently, § 34-200 mandates that the conversion has no effect on claims pending against the converting partnership or its partners, and that the members of the newly converted limited liability company retain personal liability for the preexisting debts and obligations incurred by the converting partnership.

It is readily apparent, therefore, that § 34-200 evidences an intent to facilitate seamless transition between the converting partnership and the converted limited liability company. Moreover, this legislative mandate also recognizes the importance of protecting the interests and expectations of third parties who, prior to the conversion, had contracted with, or had maintained claims against, the converting partnership. As such, § 34-200 embodies the general policy of treating the limited liability company as the successor in interest to the partnership, while ensuring that its preconversion creditors and claimants are not prejudiced by the business' change in organizational form.

We can discern no reason to distinguish between the conversion of a sole proprietorship to a limited liability company and the conversion of a general partnership to a limited liability company pursuant to § 34-200. "Where possible, courts should, as a matter of common law adjudication, 'assure that the body of the law—both common and statutory—remains coherent and consistent.' *Fahy* v. *Fahy*, supra, 227 Conn. 513–14." *Williams Ford, Inc.* v. *Hartford Courant Co.*, supra, 232 Conn. 586. We conclude, therefore, that where a sole proprietorship converts to a limited liability company, all of the interests and obligations incurred by, or chargeable against, the sole proprietorship or its assets are transferred to the limited liability company by operation of law. Moreover, like the general partners in a converting general or limited partnership, the sole proprietor retains personal liability for all preconversion debts and obligations incurred by the sole proprietorship.

Because the plaintiff constitutes a continuation of the sole proprietorship in limited liability company form, the plaintiff assumed, by operation of law, all of the rights and obligations of the sole proprietorship. See *Canton Motorcar Works, Inc.* v. *DiMartino*, 6 Conn. App. 447, 453–54, 505 A.2d 1255, cert. denied, 200 Conn.

802, 509 A.2d 516 (1986) (concluding that corporation was successor in interest to general partnership); see also *Clardy* v. *Sanders*, 551 So. 2d 1057, 1060, 1062–63 (Ala.), cert. denied, 493 U.S. 959, 110 S. Ct. 376, 107 L. Ed. 2d 362 (1989) (concluding that corporation was successor in interest to sole proprietorship). Consequently, pursuant to the contract, the plaintiff is entitled to seek an order directing the defendants to submit to arbitration.

The judgment is affirmed.

In this opinion the other justices concurred.