[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 15200
Michael Picard, appeals a disciplinary order of the Connecticut Board of Veterinary Medicine ("the Board") issued on August 26, 1999. This appeal is brought pursuant to General Statutes §§ 20-203 and 4-183. The facts found by the Board after two days of hearings may be summarized as follows:
1. The plaintiff is a licensed Connecticut veterinarian who owns and operates an animal hospital in Clinton, Connecticut.
2. On November 22, 1996, a client, Sue Marchini, brought four puppies to the hospital. Marc Sminkey, a veterinary technician, examined the puppies and administered vaccinations. The plaintiff was not present during this procedure.
3. Sminkey has never been issued a license by the State of Connecticut to practice veterinary medicine.
4. On November 25, 1996, one of the puppies had diarrhea and vomiting. Marchini's husband brought the puppy back to the hospital. Sminkey examined the puppy and based on his examination, made a diagnosis of gastroenteritis.[1] He injected the puppy with penicillin and a deworming medication. He gave Mr. Marchini amoxicillin to give to the puppy at home.
5. On November 26 and November 27, 1996, the puppy had not improved. Marchini returned to the plaintiff's hospital on November 27, 1996, and again saw Sminkey, not the plaintiff Sminkey consulted with the plaintiff, who relied on Sminkey's examination of the puppy to determine the course of treatment. Sminkey administered more medication.
6. Marchini requested that the plaintiff perform blood tests and a radiograph. The plaintiff deemed those tests unnecessary based on Sminkey's examination. The plaintiff admits that he neither saw nor examined the puppy on November 27, 1996. Instead, he observed Sminkey's examination by video while performing surgery on a cat.
7. Marchini was not given the option of waiting for the plaintiff to CT Page 15201 complete the surgery so that he could personally examine her puppy. She was informed that the hospital would be closed for the Thanksgiving holiday weekend.
8. The puppy's condition improved slightly on November 28th but by November 29, 1996, the puppy's condition deteriorated. Marchini called other veterinarians in her area since the plaintiff's office was closed. While en route to veterinarian Robert Fair's animal hospital, the puppy died. According to the autopsy performed by Dr. Fair and reviewed through tissue samples at Tufts School of Veterinary Medicine, the puppy died of peritonitis.
(Return of Record ("ROR"), Volume I, Memorandum of Decision, pp. 3-5.)
Based upon these findings of fact, the Board concluded that the plaintiff had provided negligent care to the puppy by: 1) failing to examine the puppy personally on November 27, 1996; 2) relying on an inadequate examination by a veterinary technician to determine appropriate treatment; and 3) failing to perform appropriate diagnostic testing as requested by the pet owner. Pursuant to General Statutes §§ 19a-17 and 20-202, the Board ordered the plaintiff to pay a civil penalty in the amount of $2000 and placed his license on probation in accordance with the terms and conditions imposed by the Board for a period of one year. (ROR, Volume I, Memorandum of Decision, pp. 6-7.) This appeal followed.[2]
The plaintiff's first claim on appeal is that the Board's three veterinary members, all of whom participated in the decision, were improperly sitting on the Board. According to the plaintiff, the three veterinary members had served on the Board for more than two consecutive terms in violation of General Statutes § 20-196 (a). General Statutes § 20-196 (a) provides:
 There shall be a Connecticut Board of Veterinary Medicine. The Board shall consist of five members appointed by the Governor, subject to the provisions of section 4-9a, as follows: Three members of said board shall be practitioners of veterinary medicine residing in this state in good professional standing and two shall be public members. No member of said board shall be an elected or appointed officer of the Connecticut Veterinary Medical Association or have been such an officer during the year immediately preceding his appointment, or serve for more than two consecutive terms . . .
CT Page 15202 General Statutes § 4-9a provides:
 (c) Notwithstanding any provision of law to the contrary, the term of each member of each board or commission within the executive branch. shall be coterminous with the Term of the Governor or until a successor is chosen whichever is later.
The plaintiff and defendant agree that the three veterinarians on the Board were appointed by Governor O'Neill. The plaintiff argues that as to these members, their terms could not extend beyond January, 1995,[3]
and therefore the plaintiff did not receive a hearing before a properly-constituted body.[4]
The Board argues that since there were no successors appointed, the Board continues indefinitely under the hold-over doctrine of State exrel. McCarthy v. Watson, 132 Conn. 518 (1949). The court is bound to reconcile provisions of statutes so that the law remains "coherent and consistent." C J Builders Remodelers, LLC v Geisenheimer,249 Conn. 415, 422 (1999). The result of this process must be "sensible and rational." Grigerik v. Sharpe, 247 Conn. 293 (1998). "We presume that the legislature had a purpose for each sentence, clause or phrase in a legislative enactment, and that it did not intend to enact meaningless provisions. It is a basic tenet of statutory construction that the legislature did not intend to enact meaningless provisions. Accordingly, care must be taken to effectuate all provisions of the statute." Ferrignov. Cromwell Development Associates, 244 Conn. 189, 196 (1998) (citations and quotation marks omitted.)
Here, the principle of law that sustains holdover officials, namely preventing "public inconvenience arising from the want of a party authorizing for the time being to discharge the duties of a public office," Sansone v. Clifford, 219 Conn. 217, 225 (1991), overrides the term limit provision of § 20-196 (a) where a successor has not yet been appointed. This makes the Board members de jure officers. Id., 226.[5]
Even if the Board, after January 1995, had become improperly constituted, the three Board members were de facto officers during the time of the administrative proceedings and the issuance of the decision in this matter. The doctrine of a de facto officer had its origin in Connecticut in the case of State v. Carroll, 38 Conn. 449 (1871), which has been relied on subsequently by many jurisdictions. See, e.g.,Jennings v. Woods, 982 P.2d 274, 292 (Ariz. 1999).[6]
Under the de facto principle, an officer not legally eligible due to an CT Page 15203 appointment error retains the authority of the office. "Under this policy, an elected or appointed officer may remain in office after the expiration of its term until a successor qualifies, whether or not this is provided for by the statute creating the office. Stated otherwise, the rights of a holdover officer terminate when the rights of the successor vest." 3 E. McQuillin, Municipal Corporations (3d Ed. 1990) § 12.105, p. 513; see also Casamasino v. City of Jersey City, 730 A.2d 287,296 (N.J. 1999).
Under this doctrine, "there is no difference between the acts of de facto and de jure officers so far as the public and third persons are concerned. The principle is placed on the high ground of public policy, and for the protection of those having official business to transact, and to prevent a failure of public justice. . . ." (Citations omitted.)Furtney v. Zoning Commission, 159 Conn. 585, 597 (1970). Here, the Board, even if it consisted of three de facto members and one de jure member, was legally constituted and its actions are valid.
The plaintiff's second ground of appeal is that the decision of the Board was not supported by substantial evidence. Here, the standard to review such a claim has clearly been established by our courts. The court's "review of an agency's factual determination is constrained by General Statutes § 4-183 (j), which mandates that a court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. . . . This limited standard of review dictates that, with regard to questions of fact, it is neither the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency. . . . An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole. Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review. . . . The burden is on the plaintiffs to demonstrate that the [agency's] factual conclusions were not supported by the weight of substantial evidence on the whole record. . . ." (Brackets omitted; citations omitted; internal quotation marks omitted.) New England Cable Television Assn., Inc. v.Department of Public Utility Control, 247 Conn. 95, 117-18 (1998). See also Wasfi v. Department of Public Health, 60 Conn. App. 775, 780
(2000). (Standard for review of revocation of veterinarian's license.) CT Page 15204
The plaintiff points to two matters to argue that the agency's factual conclusions are not supportable in the record. The first is that the Board concluded that the plaintiff was negligent in delegating responsibility for the puppy's examination to his assistant. He points to a regulation of the Board allowing for an assistant to take on a major role at the veterinarian's hospital. Regs., Conn. State Agencies § 20-196-13a.
Relying on the regulation, the plaintiff argues that the Board erroneously concluded that the plaintiff was at fault. In making this argument, the plaintiff argues that he "directly" supervised his assistant as required by the regulation. This contention is not supported by the evidence as regards the incidents of November 27, 1996. Sminkey alone saw the puppy and gave it a shot and further medication. The plaintiff was in the operating room and while he communicated with Sminkey and saw the puppy through a video camera, he did not actually conduct an examination. (ROR, Volume II, pp. 43, 51, 61, 63; Volume III, pp. 9-10, 37-38.) Further, General Statutes § 20-197 allows only licensed veterinarians to diagnose and treat animals. Sminkey was given authority by the plaintiff not allowed under this statute.
The Board's conclusion is supported by the testimony of Dr. Roumanis, the Board's expert witness. Dr. Romanis testified that the plaintiff fell below the standard of care in not "examining the animal, did not have the adequate information necessary to make the diagnosis and treatment that he did. (ROR, Volume II, p. 129.) He further testified that the plaintiff treated this puppy "based on the physical exam of Mr. Sminkey without any personal knowledge of any change in the puppy's condition at that point, two days subsequent to when it was last seen." This violated the standard of care. (ROR, Volume II, p. 130.) As indicated above, the credibility of a witness is within the province of the administrative agency.
The Board also may rely on its own expertise. The Board has authority to determine what conduct constitutes a violation of the standard of care. Pet v. Department of Health Services, 228 Conn. 651, 666 (1994);Wasfi v. Department of Public Health at 786. Thus, there is substantial evidence to support the Board's determination that the plaintiff's treatment in delegating the November 27th examination and the failure to obtain tests was below the standard of care.
The plaintiff also contends that the Board's finding against him was based upon financial bias against a competitor. There is no evidence of record to support this proposition. A comment was made by the Chairman of the Board that he would expect all veterinarians to adhere to the regulations on the use of veterinarian assistants because "if we're not CT Page 15205 all on a level playing field, and I have concerns about that. . . ." (ROR, Volume III, pp. 49-50.) This comment is insufficient evidence of the claimed bias.
In Breiner v. State Dental Commission, 57 Conn. App. 700, 706 (2000), the Appellate Court has recently summarized the standard for a finding of bias by a hearing officer as follows:
 [T]o prove bias as a ground for disqualification, the plaintiff must show more than an adjudicator's announced previous position about law and policy. . . . He must make a showing that the adjudicator has prejudged adjudicative facts that are in dispute.
(Citations omitted; emphasis added; internal quotation marks omitted.) Clisham v. Board of Police Commissioners, supra, 362. The bias must be so prevalent that it is "too high to be constitutionally tolerable."
(Internal quotation marks omitted.) Id. Obviously the chairman was remarking on a philosophical point and not on the issue of the plaintiff's own style of practicing veterinary science.
Finally, the plaintiff argues that he attempted in his own testimony, and was denied the right, to put in evidence of his charitable good works, so that he might mitigate any penalty assessed against him. In fact, the Board did hear testimony from another witness concerning his donation of vaccines and care to various animals. (ROR, Volume II, pp. 151-52.) In any event, the decision to allow or exclude evidence is within the discretion of the Board "unless substantial prejudice is shown." (Emphasis added.) Griffin v. Muzio, 10 Conn. App. 90, 93, cert. denied, 203 Conn. 805 (1987) The record does not support a finding of such prejudice here.
For the reasons stated above, the appeal is therefore dismissed.
Henry S. Cohn, Judge