[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 8283
The plaintiff, 178 Cottage Road, LLC, filed this appeal pursuant to General Statutes § 12-422 from a decision of the Commissioner of Revenue Services denying its petition for reassessment of sales and use tax. The Commissioner determined that 178 Cottage Road, LLC was liable for a sales and use tax assessment made against Free Spirit Marine Corporation of Florida d/b/a Bayliner Boat Center ("FSM"), in the amount of $104,481.18 tax, plus interest and penalty.
General Statutes § 12-424[1] imposes a tax upon a successor or assign of a "retailer liable for any amount under this chapter [who] sells out his business or stock of goods or quits the business . . . to the extent of the purchase price, valued in money." The key issue in this case is whether the plaintiff, 178 Cottage Road LLC, is the successor or assign to the business or stock of goods of FSM.
FSM was a Florida corporation formed prior to 1990 for the purpose of operating a dealership selling Silverton boats in Florida. Gary Dobrindt was the president and sole stockholder of FSM. FSM lost the Silverton dealership in Florida and moved its business to Westbrook, Connecticut to operate a boat slip marina until 1994. Due to condemnation proceeding at the Westbrook location, FSM moved its operation in 1994 to the Clinton/Madison area of Connecticut located on the Hammonasset River. FSM rented marinas located on both sides of the Hammonassett River in Clinton and Madison from Hammonasset River Marina, Inc. Prior to 1994, the marinas had been operating in a run-down condition. Hammonasset River Marina, Inc. owned the real estate containing the two marinas. The major stockholders of Hammonasset River Marina, Inc. were Michael Gray and Franklin Rubenstein. Gray and Rubenstein also owned a boat dealership that operated out of the marinas called Hammonasset Boat Sales, Inc., which was a distributor for Bayliner boats, as a sales agency. In 1994, Gray and Rubenstein asked Dobrindt, the president and shareholder of FSM, to operate the two marinas by renting the boat slips and selling boats as a representative of Hammonasset Boat Sales, Inc. From 1994 to November 1, 1997, FSM operated the rental of boat slips, boat storage and repairs at the marinas, and also sold Bayliner boats for Hammonasset Boat Sales, Inc. FSM made the boat sales on behalf of Hammonasset Boat Sales, Inc., paid Hammonasset Boat Sales, Inc. the cost of the boats, and retained commissions and costs.
In March, 1996, pursuant to an audit, the Commissioner assessed a sales and use tax deficiency against FSM pursuant to General Statutes §12-415 for the period of July 1, 1992 to June 30, 1995, in the amount of $104,481.18, plus interest and penalty. FSM disputed the findings of the CT Page 8284 Commissioner and filed a protest on May 30, 1996. Although a hearing was scheduled by the Commissioner on this protest, FSM waived its right to a hearing and requested to pursue its rights by judicial appeal. The Commissioner sent a notice of final determination upholding the assessment by certified mail return receipt requested in April, 1997. This notice was not delivered. However, the Commissioner did fax a copy of the final determination letter to FSM at the request of Gary Dobrindt on June 25, 1997, and on September 3, 1997, the Commissioner mailed a copy of the notice of the final determination letter to FSM's counsel. FSM did not appeal the Commissioner's final determination upholding the assessment of sales and use taxes. FSM ceased doing business and filed a dissolution of the corporation with the State of Connecticut on November 1, 1997.
On November 1, 1997, Dobrindt and a real estate investor, George MacLauchan, formed 178 Cottage Road, LLC, to purchase the two marinas from Hammonasset River Marina, Inc. The sale was never consummated. MacLauchan was not involved in the business of FSM, and in forming 178 Cottage Road, LLC with Dobrindt, MacLauchan wanted to be sure that the purchase of the marinas would occur without any baggage or personal liability. Instead of purchasing the two marinas, 178 Cottage Road, LLC, rented the marinas for boat slip rentals, storage and repairs. Dobrindt also acts as the general manager for Hammonasset Boat Sales, Inc. and 178 Cottage Road, LLC, and sells Bayliner boats under the same arrangement as FSM did for Hammonasset Boat Sales, Inc. By the plaintiffs own admission, 178 Cottage Road, LLC commenced business at the two marinas on November 1, 1997, in the capacity that FSM had done business at the marinas. (See plaintiffs post trial brief, p. 6.) Dobrindt was the president and sole shareholder of FSM, as well as the general manger and incorporator of 178 Cottage Road, LLC. MacLauchan did not invest any money in either FSM or 178 Cottage Road, LLC. His only participation in 178 Cottage Road, LLC was to attempt to purchase the two marinas, not to be actively involved in the general business of 178 Cottage Road, LLC.
By letter dated February 3, 1998, a tax hearings officer of the department of revenue services notified the plaintiff that the department had determined that 178 Cottage Road, LLC had purchased the business or stock of goods of FSM; and therefore, 178 Cottage Road, LLC would be liable for the tax debts of the former owner. The plaintiff protested the assessment to the department's appellate division, which denied the plaintiffs petition for reassessment based upon the finding that the assignment of successor liability pursuant to General Statutes §12-424 was proper and legal. The plaintiff filed a timely appeal to this court. The plaintiff claims that it is not a successor to FSM because the owners of FSM are different than the owners of 178 Cottage Road, LLC, and FSM conducted business in Connecticut and Florida, while 178 Cottage CT Page 8285 Road, LLC is a Connecticut company transacting business only in Connecticut. The plaintiff further contends that it is not a successor because FSM was a sales organization only, so it had no assets to sell or convey to 178 Cottage Road, LLC. Finally, the plaintiff claims that if the court determines that 178 Cottage Road, LLC is a successor to FSM, the court should find that the original assessment against FSM was not valid in that the auditor from the department of revenue services incorrectly calculated FSM's sales.
FSM's final federal corporation income tax return for the period of January 1, 1997 to November 30, 1997 discloses a final inventory of $1,568,850. The initial 1997 federal corporation income tax return for 178 Cottage Road, LLC shows a starting inventory of $1,568,850. FSM's 1997 federal tax return discloses buildings and other depreciable assets with a threshold cost before reduction of $200,000. The 1997 federal tax return of 178 Cottage Road, LLC discloses a depreciable asset with a threshold cost before reduction of $200,000. The reporting of the substantial amount of inventory and the depreciable asset on FSM's final tax return is inconsistent with Dobrindt's statement that FSM did not own any assets in 1997. (9/13/00 Transcript, p. 17; Plaintiff's post trial brief, p. 5.)
When we are faced with inconsistent positions, we must look at the facts in this case. The facts show that FSM was in the boat sales/slip rental business when it was dissolved on November 1, 1997 and 178 Cottage Road, LLC was formed on the very same day to operate a boat sales/slip rental business that FSM had previously operated on the same premises. FSM and 178 Cottage Road, LLC reported on their federal tax returns that they owned the exact same amount of inventory and depreciable assets. 178 Cottage Road, LLC's 1997 tax return shows that it commenced business on November 1, 1997, without any investment made by either Dobrindt or MacLauchan, and one month later on December 31, 1997, the corporation reported having an inventory of $1,568,850, the same amount that appeared on FSM's final tax return. In addition to the assets reported by FSM and 178 Cottage Road, LLC on their 1997 federal tax returns, they also reported their debts and liabilities. FSM reported on its 1997 federal return loans from stockholders of $885,674 and outstanding mortgages, notes and bonds in the amount of $867,998. 178 Cottage Road, LLC reported on its 1997 federal return loans from stockholders of $743,062, and mortgages, notes and bonds of $867,998.178 Cottage Road, LLC operates on the same premises, has the same employees and same telephone lines as FSM. Dobrindt controlled FSM until it ceased operation, and controlled 178 Cottage Road, LLC after it commenced business on November 1, 1997. From these findings, we can only conclude that 178 Cottage Road, LLC was the successor to FSM. CT Page 8286
"`[T]he term successor in interest ordinarily refers to a corporation that by a process of amalgamation, consolidation or duly authorized legal succession, has become invested with the rights and has assumed the burdens of [another] corporation.'" C J Builders Remodelers, LLC v.Geisenheimer, 249 Conn. 415, 419, 733 A.2d 193 (1999), quoting Bouchardv. People's Bank, 219 Conn. 465, 472, 594 A.2d 1 (1991). That is what has happened here. 178 Cottage Road LLC acquired the inventory of FSM in the amount of $1,568,850 the fixed asset of FSM at $200,000, and the debt obligations of FSM at $867,998.
General Statutes § 12-424 imposes a tax liability upon a successor or assign of a "retailer liable for any amount under this chapter" who sells out its business or stock of goods or quits the business "to the extent of the purchase price, valued in money." It is fair to conclude that FSM, as a retailer, sold its business, which included the inventory, the fixed asset less the debt. 178 Cottage Road LLC constitutes a continuation of FSM, and by operation of law, 178 Cottage Road LLC assumed all of the rights and obligations of FSM. See C JBuilders Remodelers LLC v. Geisenheimer, supra, 249 Conn. 422. Under these circumstances, 178 Cottage Road, LLC has assumed the obligation of the sales tax deficiency levied by the Commissioner against its predecessor, FSM.
The plaintiff raises an additional issue as to whether 178 Cottage Road, LLC can contest the finding of the Commissioner as to the original assessment of taxes against FSM. Section 12-424 (1) requires a purchaser who acquires all of the assets of another to withhold a sufficient amount of the purchase price to cover any amount of taxes due the state of Connecticut by the seller, unless the seller has produced a certificate from the Commissioner showing no amount due. If the purchaser fails to withhold the amount of the tax debt from the purchase price, that purchaser becomes personally liable for the debt due "to the extent of the purchase price, valued in money." General Statutes § 12-424 (2).
FSM failed to appeal the sales and use tax deficiency assessment levied against it by the Commissioner. We assume that 178 Cottage Road LLC was aware of the provisions of § 12-424 and the risks imposed by that statute on any successor corporation purchasing the business or inventory of its predecessor without the certificate from the Commissioner showing no taxes due. No such certificate was obtained by FSM. We have not been shown any statutory or common law authority which would allow a successor corporation to stand in the shoes of its predecessor for the purpose of contesting a tax deficiency where the predecessor failed to do so. "Section 12-422 affords aggrieved taxpayers the right to appeal an order, decision, determination or disallowance of the commissioner to the Superior Court within one month after they have been served with notice CT Page 8287 of such an order." Jade Aircraft Sales, Inc. v. Crystal, 236 Conn. 701,708, 674 A.2d 834 (1996). Only FSM was an aggrieved party to the Commissioner's decision authorized to take an appeal within the statutory time period. Since FSM did not file a timely appeal of the Commissioner's denial of FSM's petition for reassessment, the Commissioners s determination is final and 178 Cottage Road, LLC cannot now challenge the sales and use tax assessment against FSM.
For the above stated reasons, the plaintiffs appeal is dismissed. Judgment may enter in favor of the defendant Commissioner without cost to either party.
 ___________________ ARNOLD W. ARONSON JUDGE TRIAL REFEREE