**STATE of Maine**

v.

**John E. HAGER.**

Supreme Judicial Court of Maine.

Argued Nov. 5, 1996.

Decided Dec. 20, 1996.

Neale T. Adams, District Attorney, John M. Pluto (orally), Caribou, for State.

Allan Hanson (Orally), Caribou, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

GLASSMAN, Justice.

John E. Hager appeals from the judgment entered in Superior Court (Aroostook County, *Pierson, J.*) on a jury verdict finding him guilty of theft by deception (Class C)[1] in violation of 17–A M.R.S.A. § 354 (1983).[2] Hager challenges the admission of certain evidence and the sufficiency of the evidence to support the verdict. We affirm the judgment.

The record reveals the following undisputed facts: In November 1991, while residing at Eagle Lake, Hager applied for and received a VISA card from Fraser Employees' Federal Credit Union (Fraser), at its Eagle Lake office with a $750.00 limit and an expiration date of November 1992. In October 1992, Fraser reissued the card, bearing the same identification numbers as the original card with an expiration date of November 1993. The balance of Hager's VISA card account at that time was $746.21.

In mid-November 1992, it was reported to Fraser's main office that Hager's unpaid balance was in excess of $11,000. To prevent further charges on Hager's credit card, Fraser put a block on the card on November 13, 1992. No previous block had been placed on the card, which was standard procedure had the credit card holder reported the card lost or stolen. Fraser reported the matter to the Madawaska Police Department who referred the case to the Maine State Police. In the execution of a search warrant the state police seized a twenty-seven-page itemized statement, dated November 10, 1992, and a credit card receipt[3] that had been located in Hager's automobile. The statement was addressed to Hager at 6720 Nova Dr., Apt. 203, Ft. Lauderdale, Fla. It set forth Hager's VISA card charges for the period from October 13 to November 10, 1992, in a total amount of $11,429.36.

By an indictment dated September 10, 1993, Hager was charged with theft by deception (Class B) from October 1992 through December 1992. At the trial on this charge the State's handwriting expert identified

---

1. At the time of the alleged offense, 17–A M.R.S.A. § 362 (1983) provided in part:
   2. Theft is a Class B crime if:
   A. The value of the property or services exceeds $5,000;
   . . . .
   3. Theft is a Class C crime if:
   A. The value of the property or services is more than $1,000 but not more than $5,000. . . .

2. 17–A M.R.S.A. § 354 provides in pertinent part:
   1. A person is guilty of theft if he obtains or exercises control over property of another as a result of deception and with an intention to deprive him thereof.

2. For purposes of this section, deception occurs when a person intentionally:
   . . . .
   B. Fails to correct an impression which is false and which he does not believe to be true, and which:
   (1) He had previously created or reinforced; or which
   (2) He knows to be influencing another whose property is involved and to whom he stands in a fiduciary or confidential relationship. . . .

3. The receipt reflected an October 26, 1992 purchase using Hager's VISA card from a Pompano Beach, Florida, establishment, but the signature on the receipt could not be deciphered.

Hager's signature on thirteen of fourteen copies of receipts for purchases made by the use of Hager's credit card. The receipts, together with the November 12, 1992 statement, were admitted in evidence over Hager's objection. Hager did not testify and offered no evidence in his defense. The jury returned a verdict finding Hager guilty of theft by deception (Class C). From the judgment entered accordingly, Hager appeals.

## I.

■ Hager first contends that the court erred in admitting copies of the fourteen receipts over his objection that they did not fall within the business record exception to the hearsay rule. M.R.Evid. 803(6).[4] He argues, as he did before the trial court, that Fraser was not the business enterprise that maintained these records and that the records were not trustworthy.

■ To satisfy the business records exception to the hearsay rule, the proponent of the record must establish, by the testimony of the custodian or other qualified witness that:

(1) the record was made "at or near the time" of the events reflected in the record by, or from information transmitted by, a person with personal knowledge of the events recorded therein; (2) the record was kept "in the course of a regularly conducted business"; (3) it was the regular practice of that business to make records of the type involved; and (4) no lack of trustworthiness is indicated from the source of information from which the record was made or the method or circumstances under which the record was prepared.

*Northeast Bank & Trust Co. v. Soley*, 481 A.2d 1123, 1125–26 (Me.1984) (citations omit-

ted). "Nothing in the Rule requires the witness to have been custodian at the time of creation of the record." *State v. Briggs*, 520 A.2d 706, 708 (Me.1987). The fact that the witness did not prepare or supervise the preparation of the record does not destroy the ability of the witness to provide the foundation for its admission as a "qualified witness." *Id.* (citation omitted).

■ "The basic guarantee of trustworthiness which justifies the exception for business records embodied in Rule 803(6) is the use and reliance on these records by a business in its everyday activities." Field & Murray, *Maine Evidence* § 803.6A at 47 (Supp.1980); *see also State v. Briggs*, 520 A.2d at 708 ("The test is the demonstration of trustworthiness.") (citation omitted). Whether to exclude business records on the basis of untrustworthiness is within the discretion of the trial court. *State v. Brunette*, 501 A.2d 419, 426 (Me.1985) (citation omitted).

To meet the requirements of the business records exception with respect to the credit card receipts, the State offered the testimony of Susan Cyr, Fraser's administrative assistant. Cyr's testimony may be summarized as follows: When a member of Fraser uses a credit card to purchase an item, the merchant sends one of the originals of the charge receipt to its bank who forwards the receipt to Bank One Ohio who forwards it to a credit card processor where it is ultimately charged back to the credit union where the member has an account. The charges a member makes are applied to the member's account at Financial Card Services in Madison Wisconsin, and the monthly statement is made up and sent to the credit card holder from that same establishment. Financial Card Services also sends a microfiche copy of the monthly statement of a credit card holder to

---

4. Maine Rule of Evidence 803 provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

**(6) Records of Regularly Conducted Business.** A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information trans-

mitted by, a person with knowledge, if kept in the course of a regular conducted business, and if it was the regular practice of that business to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. . . .

Fraser. The total amount reflected is charged to Fraser who then charges the member card holder's account. If that account is insufficient to meet the charges, Fraser is responsible in the first instance. Its recourse is to attempt recovery of any deficit from the member card holder.

Copies of the receipts are obtained by Fraser as part of its normal business records when a customer questions a charge. If a charge is questioned, Cyr fills out a draft retrieval that is transmitted to Maine Credit Union League Card Services to Financial Services to Bank One and down the line until the actual receipt is located. Cyr regularly performs this retrieval service for Fraser's credit card customers. This procedure was followed to obtain the challenged copies of Hager's credit card receipts. Although a credit card receipt remains with the merchant where the purchase is made and one is given to the customer at the time of purchase, in banking practice, absent a request, no credit card receipt is forwarded to the customer's bank.

Cyr was a "qualified witness," competent to testify as to the essential elements of the business records exception. Cyr's testimony discloses that she is intimately involved in the operations of Fraser, with personal knowledge of how the credit card receipts are kept and the procedure for obtaining copies of credit card receipts. The testimony demonstrates that the credit card receipts at issue were obtained in the course of Fraser's regularly conducted banking business and that it was the regular practice of Fraser to secure and keep records of this type if there was a dispute over a transaction. *See, e.g., E.N. Nason, Inc. v. Land–Ho Development Corp.,* 403 A.2d 1173, 1178–79 (Me.1979); *Torrey v. Full Gospel Church of Searsport,* 394 A.2d 276, 280–81 (Me.1978).

Contrary to Hager's contention, nothing in this record suggests that the challenged receipts are untrustworthy. Cyr's testimony reflects that these records are kept in a systematic way, *see Torrey v. Full Gospel Church of Searsport,* 394 A.2d at 281, and there is no indication that the records were altered or inaccurate. The court did not abuse its discretion in determining the receipts to be trustworthy and in admitting the receipts pursuant to the business records exception to the hearsay rule. *Northeast Bank & Trust Co. v. Soley,* 481 A.2d 1123, 1126 (Me.1984).

**II.**

Hager next contends, as he did before the trial court, that the admission of the copies of the credit card receipts violates the best evidence rule. The court's decision whether an exception to the best evidence rule applies is reviewed for an abuse of discretion. *Graybar Electric Co. v. Sawyer,* 485 A.2d 1384, 1387 (Me.1985).

The court admitted the copies of the receipts at the close of evidence stating, *inter alia,* that M.R.Evid. 1004(2)[5] authorized their admission. Maine Rule of Evidence 1002, the best evidence rule, states that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required except as otherwise provided in these rules or by statute." Rule 1004(2) allows for the admission of secondary evidence when the original is not obtainable by judicial process or procedure. The testimony reveals that Fraser requested the original credit card receipts and received copies. The testimony also demonstrates that the original receipts were in the possession of a third party outside the State of Maine over which the trial court had no territorial jurisdiction. In light of this testimony, the court did not abuse its discretion in admitting the copies pursuant to M.R.Evid. 1004(2).

**III.**

Hager finally contends that because the total of the charges evidenced by the fourteen receipts admitted in evidence to support the jury verdict was less than

---

5. Maine Rule of Evidence 1004(2) provides:

The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if:

. . . .

**(2) Original Not Obtainable.** No original can be obtained by any available judicial process or procedure. . . .

$1,000.00, there was insufficient evidence to support the jury's verdict. When reviewing challenges to the sufficiency of the evidence, we review all the evidence in the light most favorable to the State to determine whether a factfinder "rationally could find beyond a reasonable doubt every element of the offense charged." *State v. Marden*, 673 A.2d 1304, 1311 (Me.1996) (quoting *State v. Taylor*, 661 A.2d 665, 668 (Me.1995)). A conviction may be based on circumstantial evidence, and a factfinder is allowed to draw reasonable inferences from circumstantial evidence. *Id.* at 1312 (citations omitted).

The State submitted fourteen charge receipts in evidence,[6] and the State's expert, Edward Smith, positively identified the signature on thirteen of the fourteen receipts as Hager's and opined a likelihood that Hager also signed the other receipt. Those receipts reflected that between October 24, 1992, and November 13, 1992, Hager had made certain charges on his credit card totalling less than $1,000. The November 10, 1992 statement of charges, however, reflects, for example, that on October 24, 1992, a total of thirty-three charges had been made on Hager's credit card; on October 29, 1992, a total of nineteen charges had been made; and on November 6, 1992, a total of thirty-six charges had been made. The total amount of these charges exceeds $1,000. All of these charges were with Florida merchants and the great majority with merchants in Ft. Lauderdale. There was no evidence that Hager had reported to Fraser that his credit card had been lost or stolen. Hager did not challenge his signature on the receipts or that he had received the November 10, 1992 statement. Nor did he challenge any of the individual charges reflected on that statement. On the evidence presented to it, the jury rationally could find the State had established beyond a reasonable doubt that Hager was in possession of

the VISA card at the time charges in excess of $1,000 were made using that card, and accordingly, he was guilty of theft by deception (Class C).

The entry is:

Judgment affirmed.

All concurring.

---

**6.** The receipts admitted were for the following amounts and dates:

A number of the receipts designate the merchant being located in Ft. Lauderdale. The record reflects that subsequent to the last receipt there were three charges totalling $111.74.