STATE OF MAINE
PENOBSCOT, ss.

JOHN MCCLARE,

Plaintiffs,

v.

JAMES J. ROCHA and
EUGENE A. MERRILL,

Defendants,

and

BANGOR TIRE COMPANY,

Party-in-Interest.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-11-110
2AM - PEN - 1/9/2013

**DECISION AND ORDER
ON DEFENDANTS'
MOTION FOR
SUMMARY JUDGMENT**

Before the Court is Defendant, James J. Rocha's, M.R. Civ. P. 56 Motion

for Summary Judgment on Plaintiff, John McClare's, action for breach of

contract. The primary issue before the Court is whether a June 30, 2010 email

from Defendant's attorney to Plaintiff's attorney constituted an offer that created

a binding contract between the parties. After reviewing the record and considering

the arguments of counsel made during the January 4, 2013 oral argument, the

Court grants Defendant's motion.

## I. BACKGROUND

Plaintiff and Defendants each own one-third interest in 33-35 Market

Street, in Bangor, Maine. (Def.'s S.M.F. ¶ 2-3.) This property is leased to Bangor

Tire Company, which is a party-in-interest in this case. (Def.'s S.M.F. ¶ 14.)

Plaintiff's predecessor-in-interest executed a Right of First Refusal for the

property on March 20, 1980, in favor of Defendant Merrill. (Def.'s S.M.F. ¶ 5.) This agreement provided that written notice of intent to sell must be provided along with an opportunity to purchase. (Def.'s S.M.F. ¶ 6-7.)

In 2010, Mr. McClare decided to sell his one-third interest in the property. (Def.'s S.M.F. ¶ 15.) Mr. McClare was represented by Attorney Ferris who began discussions with Attorney McKay (who represented Mr. Rocha) concerning the valuation of the property in the context of Mr. Rocha's potential purchase of the McClare interest. (Def.'s Ex. C.)

On June 22, 2010, Attorney Ferris sent a letter to Attorney McKay proposing that the parties should share the costs of a real estate appraisal to determine the value of the property. (Def.'s Ex. C.) Attorney McKay responded via email on June 30, 2010, and stated that Mr. Rocha would not pay for an appraisal because he believed that the tax assessed value was sufficient, and also stating that Mr. Rocha had said he would pay one-third of the assessed value for the McClare interest. (Pl.'s Ex. B.) On July 6, 2010, Attorney Ferris wrote stating that his client was accepting the "offer" allegedly made by the June 30, 2010, email from Attorney McKay. (Pl.'s Ex. C.) On December 17, 2010, Mr. McClare sent a notice to Defendants purporting to satisfy the requirements of the Right of First Refusal and mentioning the "offer" from Mr. Rocha. (Def.'s S.M.F. ¶ 27.)

Mr. McClare contends that a valid contract exists between he and Mr. Rocha. Mr. Rocha argues that there was no offer and therefore no power of acceptance such that there could be a contract. The Court must now determine whether the June 30, 2010 email constituted an offer, and if so, whether a valid

2

contract exists. *Sullivan v. Porter*, 2004 ME 134, ¶ 12, 861 A.2d 625 ("any action to enforce a contract depends on the existence of the contract itself").

## II. DISCUSSION

### a. Standard of Review

In Maine, summary judgment is appropriate when review of the parties' statements of material facts and the record evidence to which the statements refer, considered in a light most favorable to the non-moving party, demonstrate that there is "no genuine issue of material fact [] in dispute," thereby meriting judgment as a matter of law for the moving party. *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 12, 2012 Me. LEXIS 103, *11 (Aug. 2, 2012); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. A contested fact is *material* if it is "one that can affect the outcome of the case," and a fact issue is *genuine* "when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *Lougee Conservancy*, 2012 ME 103, ¶ 12, 2012 ME. LEXIS at *11 (Aug. 2, 2012). In assessing ambiguities regarding the existence of a genuine issue of material fact, the Court views the summary judgment record in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor. *See Cookson v. Brewer Sch. Dep't*, 2009 ME 57, ¶¶ 11-12, 974 A.2d 276.

### b. Formation of Contract

Ordinarily, the question of whether a contract exists is a question for the fact-finder.[1] *Agway, Inc. v. Ernst*, 394 A.2d 774, 777 (Me. 1978); *Ismert &*

---

[1] However, the formation of a contract may be determined as a matter of law when the "words and actions that allegedly formed a contract [are] so clear themselves that

3

*Assocs. Inc. v. New England Mut. Life Ins. Co.*, 801 F.2d 536, 541 (1st Cir. 1986).

"A contract exists if the parties mutually assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite to enable the court to ascertain its exact meaning and fix exactly the legal liabilities of each party." *Bank of Am. v. Barr*, 2010 ME 124, ¶ 24, 9 A.3d 816 (internal quotations omitted).[2] "It is essential to the formation of a valid and enforceable contract that there be a meeting of the minds of the parties to the contract." *Ouellette v. Bolduc*, 440 A.2d 1042, 1045 (Me. 1982).

> Mere preliminary negotiations respecting the terms of an agreement do not constitute an obligatory contract. Preliminary negotiations leading up to the execution of a contract are to be distinguished from the contract itself. No contract is complete without the mutual assent of the parties to all essential elements of the agreement. The minds of the parties must meet and unite on all essential elements before an effective contract is created.

*Masselli v. Fenton*, 157 Me. 330, 337 (Me. 1961) (internal citations and quotations omitted).

### 1. Offer

It is a general maxim of contract law that an offer must be sufficiently "definite in its terms or require such definite terms in the acceptance that the

---

reasonable people could not differ over their meaning." *Bourque v. FDIC*, 42 F.3d 704, 708 (1st Cir. 1994) (internal quotations omitted).

[2] This view is consistent with that of the Restatement (Second) of Contracts § 131 which states:

> Unless additional requirements are prescribed by the particular statute, a contract within the Statute of Frauds is enforceable if it is evidenced by any writing, signed by or on behalf of the party to be charged, which
> (a) reasonably identifies the subject matter of the contract,
> (b) is sufficient to indicate that a contract with respect thereto has been made between the parties or offered by the signer to the other party, and
> (c) states with reasonable certainty the essential terms of the unperformed promises in the contract.

promises and performances to be rendered by each party are reasonably certain." *Ross v. Mancini*, 146 Me. 26, 27 (Me. 1950) (quoting Restatement (First) of Contracts § 32). This requirement of definiteness provides a basis for a court to determine the exact meaning of the terms and the legal liability of the parties in the event of a breach. *See Bank of America, N.A., v. Barr*, 2010 ME 124, ¶ 24, 9 A.3d 816.[3]

"[T]he essential material terms for a contract to sell [real estate], include[] the identification of the property, the parties to the sale, the purchase price, the amount of the down payment, and the type of financing." *Sullivan v. Porter*, 2004 ME 134, ¶ 14, 861 A.2d 625;[4] *Pelletier v. Noel*, 2005 Me. Super. LEXIS 63 (Mar. 25, 2005) (citing *Sullivan* for this same proposition); *See also, Rosenfeld v. Zerneck*, 4 Misc. 3d 193, 196 (N.Y. Sup. Ct. 2004) ("contract deposit essential term"); *Zysk v. Baker*, 21 Mass. L. Rep. 675 (Mass. Super. Ct. 2006) ("deposit requirements a material term"); *SDK Invs. v. Ott*, 1996 U.S. Dist. LEXIS 1678 n.4 (E.D. Pa. Feb. 15, 1996) (down payment an essential term of a real estate contract). It remains well settled that the "memorandum [must] contain within itself . . . all the essential terms of the contract, expressed with such reasonable certainty as may be understood from the memorandum and other written evidence

---

[3] *See Corthell v. Summit Thread Co.*, 132 Me. 94, 99 (Me. 1933) for an extensive discussion of the issue.

[4] In *Sullivan*, the Law Court compared its decision to *A. B. C. Auto Parts, Inc. v. Moran*, 359 Mass. 327, 268 N.E.2d 844, 847 (Mass. 1971). Although counsel for Mr. McClare argues that the language of *A.B.C. Auto Parts* which states that when "no terms of payment are specified, [] an agreement to pay cash is implied" should entice this Court to imply that no down payment provision was required, the Court disagrees. The Law Court clearly considered this language and determined that a contract to buy/sell real estate must contain a down payment provision.

referred to, (if any) without any aid from parol testimony." *Gagne*, 1997 ME 88, ¶

9, 696 A.2d at 414.

In this case, which involves a contract for the sale of real estate, the

following correspondence occurred: On June 22, 2010, Attorney Ferris sent a

letter to Attorney McKay stating:

> I have talked to my client and he is agreeable to sharing one-third of the cost of an appraisal by a competent commercial appraiser. None of the parties will be bound to accept the appraised value. [He then went on to recommend three appraisers].

On June 30, 2010, Attorney McKay responded by email stating:

> Hi Joe, I have reviewed your letter with Jim Rocha. The assessed value of the real estate is $430,600 ($362,800 for the buildings and $67,800 for the land). Based on conversations with several local real estate agents, Jim believes that in this market, and particularly at that location, the assessed value probably is higher than actual market value. Jim has offered to acquire the McClare interest for one third of the assessed value. He believes that offer is fair. If your clients want to validate Jim's assumptions as to the relationship between fair market value and assessed value, he has no objection to their doing so but not at his cost.
>
> Jim Says that he would be happy to speak with the McClare's directly if that would facilitate an agreement. Please let me know how your clients would like to proceed from here.

(Pl.'s Ex. B.) Attorney Ferris responded to the email on July 6, 2010, by stating:

> Dan. My client accepts your clients [sic] offer of $143,533 for his 1/3 interest in the Bangor Tire property. Please let me know how much time you need if any to raise funds. I will prepare the deed. Let me know who will take title. Thanks for your help. Joe.

(Pl.'s Ex. C.)

Cognizant of the legal framework outlined above, and after a review of the

record on summary judgment and consideration of the party's arguments at

hearing, the Court concludes that the June 30, 2010, email did not contain all of

the essential terms necessary to create a real estate contract because it only addressed the price (1/3 of $430,600) and the property to be purchased (the McClare interest). The Law Court has made clear that the down payment in a real estate contract is an essential and material term that must be mutually assented to before a valid contract may be formed. There is no indication in the record that the parties had previously agreed on financing terms or a down payment, if any; therefore, Plaintiff has failed to create a genuine issue with respect to the presence of all of the material terms. Without all of the material terms being present there could not have been a meeting of the minds sufficient to form a contract. Accordingly, the January 30, 2010, email could properly be viewed only as preliminary negotiations.

Because the Court concludes that there has been no valid contract formation, it does not reach the question of enforceability with respect to the Statute of Frauds and definiteness. Partial summary judgment is granted for the Defendants.

The entry is:

1. Defendant's M.R. Civ. P. 56 Motion for Summary Judgment is **GRANTED** as to Count I.

2. At the direction of the Court, this Order shall be incorporated into the docket by reference pursuant to M.R. Civ. P. 79.

Dated: January 9, 2013

Ann M. Murray
Justice, Superior Court

7