MC/

STATE OF MAINE                 SUPERIOR COURT
CUMBERLAND, ss              CIVIL ACTION
                                DOCKET NO. CV-12-114
                                JAW - CUM-10/1/2013

AMERICAN EXPRESS BANK, FSB,    )
       Plaintiff                    )
                                )      ORDER ON MOTION FOR
      v.                            )      SUMMARY JUDGMENT
                                )
LISA COOKE,                     )
       Defendant              )

STATE OF MAINE
Cumberland ss. Clerk's Office

OCT 01 2013

RECEIVED

This matter is before the Court on Plaintiff's motion for summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff opened a credit account for Defendant on November 17, 2006 and mailed an American Express credit card to Defendant with a copy of its cardholder agreement. (Pl.'s Reply S.M.F. ¶ 18, as qualified; Gibbs Aff. ¶ 7; Def.'s O.S.M.F. ¶ 2, as qualified.) Defendant began using the credit card and receiving periodic billing statements for the account. (Def.'s O.S.M.F. ¶ 5, as qualified.) From the first time she used the card through March 14, 2008, Defendant made timely payments on her account. (Def.'s A.S.M.F. ¶ 33.) On April 14, 2008, without notice to Defendant, Plaintiff adjusted Defendant's credit line from $16,200 to $5,900. (Pl.'s Reply S.M.F. ¶¶ 34-35, as qualified.) At that time, Defendant's balance on the account was $5,808.05. (Pl.'s Reply S.M.F. ¶ 36, as qualified.)

On May 15, 2011, Plaintiff issued a billing statement for Defendant's account that shows an unpaid balance of $5,161.43. (Pl.'s S.M.F. ¶¶ 7-8.) Plaintiff acknowledges receiving this statement but disputes its accuracy. (Def.'s O.S.M.F. ¶ 7.) The parties dispute whether Defendant ever contacted the Plaintiff to dispute the amount owed.

(Def.'s A.S.M.F. ¶ 44; Gibbs Aff. ¶ 12.) According to Defendant's affidavit, she "did contact Plaintiff to dispute the accuracy of the amount owed." (Cooke Aff. ¶ 37.) She does not provide any more details about her contact with Plaintiff. According to Walter Gibbs' affidavit in support of Plaintiff's motion, nothing in Defendant's records shows that she ever objected to the billing amounts prior to this lawsuit. (Gibbs Aff. ¶ 12.)

On February 29, 2012, Plaintiff filed a complaint in the Portland District Court alleging three counts: count I: breach of contract; count II: quantum meruit; and count III: action on an account annexed under 16 M.R.S.A. § 355. On March 7, 2012, the case was removed to the Superior Court in Cumberland County. On September 24, 2012 Plaintiff filed this motion for summary judgment on counts I and III of its complaint.

## DISCUSSION

1. Summary Judgment Standard

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.,* 2001 ME 77, ¶ 4, 770 A.2d 653. "A genuine issue of material fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Inkel v. Livingston,* 2005 ME 42, ¶ 4, 869 A.2d 745 (quoting *Lever v. Acadia Hosp. Corp.,* 2004 ME 35, ¶ 2, 845 A.2d 1178). "A moving party's factual assertions may not be deemed admitted because of an improper response unless those factual assertions are properly supported." *Cach, LLC v. Kulas,* 2011 ME 70, ¶ 9, 21 A.3d 1015.

2

2. Gibbs Affidavit

Defendant claims that Walter Gibbs does not provide the necessary foundational information to support his statements in his affidavit or the admission of business records attached to the affidavit.

> To admit a business record pursuant to Rule 803(6), the party offering the evidence must lay a proper foundation by presenting testimony of 'the custodian or other qualified witness' showing that:
>
> (1) the record was made at or near the time of the events reflected in the record by, or from information transmitted by, a person with personal knowledge of the events recorded therein;
> (2) the record was kept in the course of a regularly conducted business;
> (3) it was the regular practice of the business to make records of the type involved; and
> (4) no lack of trustworthiness is indicated from the source of information from which the record was made or the method or circumstances under which the record was prepared.

*Bank of America, N.A. v. Barr*, 2010 ME 124, ¶ 18, 9 A.3d 816 (quoting *State v. Nelson*, 2010 ME 40, ¶ 9, 994 A.2d 808). A qualified witness must have firsthand knowledge of matters testified to and be involved in the daily operations of the business. *Id.* ¶ 19.

Mr. Gibbs is an Assistant Custodian of Records for Plaintiff. (Gibbs Aff. ¶ 1.) In his affidavit, Mr. Gibbs testified that account records "are electronically maintained on computer systems in the ordinary course of [Plaintiff's] business at or near the time of each event recorded, by someone with personal knowledge of the events, or from information transmitted by someone with personal knowledge of the events." (Gibbs Aff. ¶ 4.) Mr. Gibbs also testified that the records are made and kept in the ordinary course of Plaintiff's business. (Gibbs Aff. ¶ 2.) As part of his job duties, Mr. Gibbs has access to Defendant's account records involved in this case. (Gibbs Aff. ¶ 4.) Although Defendant challenges the accuracy of some of the billing statements, she does not contest their

3

authenticity. Accordingly, the Plaintiff has met the foundational requirements for the admission of Defendant's account records under the business records exception.

Defendant also relies on *Cach, LLC v. Kulas* to attack the Gibbs affidavit. In *Cach, LLC*, the Law Court held that an affidavit, without attached and sworn documentation, is insufficient to establish an assignment of an account. *Cach, LLC v. Kulas*, 2011 ME 70, ¶ 10, 21 A.3d 1015; *see also FIA Card Services, N.A. v. Saintonge*, 2013 ME 65, ¶ 3, 70 A.3d 1224. This case does not involve an assignment because Plaintiff opened and still owns the account at issue. Furthermore, Plaintiff does not rely on the affidavit alone but on the attached account documentation, which includes the cardholder agreement, billing records, periodic statements, and payment records. Mr. Gibbs swore to the truth and accuracy of each of the attached exhibits in his affidavit. (Gibbs Aff. ¶¶ 7-9.) The affidavit is therefore sufficient under the *Cach, LLC* standard.

### 3. Contract Formation and Terms

Defendant argues that she never agreed to any of the terms contained in Plaintiff's cardholder agreement. She argues that Plaintiff has failed to prove 1) the existence of a contract and 2) its terms. "A contract exists if the parties mutually assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite to enable the court to ascertain its exact meaning and fix exactly the legal liabilities of each party." *Sullivan v. Porter*, 2004 ME 134, ¶ 13, 861 A.2d 625.

In *Barr*, the Law Court considered whether there was sufficient evidence of a contract and its terms where a line of credit application was not included in the record in its entirety. *Barr*, 2010 ME 124, ¶ 25, 9 A.3d 816. The court found:

4

> Although the line of credit application is not included in the record in its entirety, the record evidence—specifically, Barr's admissions . . ., the welcome/approval letter, the monthly statements, the four-year course of dealings before the default, the notice of default, and trial testimony—supports the court's determination that a contract existed, that the contract had sufficiently definite terms to enable a court to assign legal liabilities, and that there was sufficient evidence of breach.

*Id.*

According to the Gibbs affidavit, a copy of the agreement between the cardholder and Plaintiff was mailed to Defendant with the credit card. (Gibbs Aff. ¶ 7.) That agreement provides, "When you keep, sign or use the Card issued to you (including any renewal or replacement Cards), or you use the account associated with this Agreement (your "Account"), you agree to the terms of this Agreement." (Exhibit A, page 1.) The cardholder agreement includes the applicable finance charges, late fees, and other payment terms. Although Defendant contends that she did not agree to the cardholder agreement, she does not dispute that she received the written agreement with the credit card. Defendant used the card and made timely payments from the time the account was opened until March 2008. (Def.'s A.S.M.F. ¶ 33; Exhibit C.) By using the card after receiving the written cardholder agreement, Defendant agreed to abide by the terms of the agreement.

Defendant also argues that Plaintiff lacked the authority to unilaterally reduce her credit limit. Plaintiff's cardholder agreement states, however, "We may at any time and in our sole discretion, increase and/or decrease your credit line and Cash Advance limit." (Exhibit A, page 1.) Plaintiff therefore did have the authority to reduce Defendant's credit limit at any time.

5

4. Breach of Contract

Defendant insists that after subtracting incorrect charges to her account, she does not owe Plaintiff anything. She challenges certain charges listed on the September 14, 2010 billing statement and certain charges incurred prior to the May 15, 2011 billing statement. The cardholder agreement applies once again. It provides:

> If you think your statement is wrong or if you need more information about a transaction on your statement, write us on a separate sheet of paper at the address for billing inquiries listed on your statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.
> 
> ***
> 
> We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the statement was correct.

(Exhibit A, page 4.) Plaintiff has no record that Defendant ever contacted American Express to dispute any charges. (Gibbs Aff. ¶ 12.) According to Gibbs, a record would have been generated if Defendant had contacted Plaintiff to dispute a charge in a billing statement. (Gibbs Aff. ¶ 12.) Although Defendant states in her affidavit that she contacted the Plaintiff, she does not specify when that contact occurred and she does not produce a letter or other written record of her communication. (Cooke Aff. ¶ 37.) According to the cardholder agreement, Defendant was required to contact the Plaintiff in writing to preserve her rights. A mere allegation that she contacted Plaintiff is insufficient to raise a genuine issue of material fact. *See Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821 ("Summary judgment is appropriate . . . if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." (internal quotations omitted)). Because Defendant has failed to show that

she wrote to the Plaintiff to dispute any charges in her billing statements as required by the cardholder agreement, she cannot now challenge those statements as incorrect.

According to the billing statement for May 15, 2011, the Defendant owes a balance of $5,161.43. (Exhibit B, page 1.) Plaintiff has therefore met its burden of establishing a prima facie case for breach of contract and is entitled to summary judgment on count I of its complaint.

5. Account Annexed

Under 16 M.R.S.A. § 355:

> In all actions brought on an itemized account annexed to the complaint, the affidavit of the plaintiff, made before a notary public using a seal, that the account on which the action is brought is a true statement of the indebtedness existing between the parties to the action with all proper credits given and that the prices or items charged therein are just and reasonable shall be prima facie evidence of the truth of the statement made in such affidavit and shall entitle the plaintiff to the judgment unless rebutted by competent and sufficient evidence. When the plaintiff is a corporation, the affidavit may be made by its president, vice-president, secretary, treasurer or other person authorized by the corporation.

As discussed above, the Gibbs affidavit is sufficient to establish a prima facie case for breach of contract. It is therefore also sufficient to make out a prima facie case under the account annexed statute. Defendant has failed to raise competent and sufficient evidence to rebut Plaintiff's case. Accordingly, Plaintiff is entitled to judgment on Count III of its complaint.

## CONCLUSION

Defendant has failed to raise a genuine issue of material fact on Plaintiff's breach of contract and account annexed claims. Because the Court finds that there was an express contract that controls in this case, count II of Plaintiff's complaint for recovery under a quantum meruit theory is dismissed.

The entry is:

Plaintiff's motion for summary judgment on counts I and III of the complaint is GRANTED.
Count II of Plaintiff's complaint is DISMISSED.

Defendant Lisa Cooke is ORDERED to pay $5,161.43 plus pre- and post-judgment interest.


Date:   September 27, 2013

Joyce A. Wheeler
Justice, Superior Court

Plaintiff-Kate Conley Esq
Defendant-Mark Randall Esq/Mark
 Kearns Esq

8