ENTERED AUG 0 6 2014

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-11-606
NDM-CMM-07-09-14

U.S. BANK, N.A.,

Plaintiff

v.

PENNY LOWELL,

Defendant

ORDER ON DEFENDANT'S
MOTION FOR
ATTORNEY'S FEES

Defendant prevailed in this foreclosure action after the court found plaintiff's witness was not qualified to testify regarding plaintiff's business records. Defendant moves for attorney's fees pursuant to 14 M.R.S. § 6101, which provides:

> If the mortgagee does not prevail . . . the court may order the mortgagee to pay the mortgagor's reasonable court costs and attorney's fees incurred in defending against the foreclosure or any proceeding within the foreclosure action and deny in full or in part the award of attorney's fees and costs to the mortgagee.

14 M.R.S. § 6101 (2013). Plaintiff argues that defendant should not receive all of the requested fees for three reasons: (1) the loan modification work is not a "proceeding" within the meaning of the statute, (2) loan modification work is not legal in nature, and (3) defendant has requested fees for duplicative work.

1. Proceeding

Plaintiff first argues that the loan modification work performed by Attorney Bopp Stark does not constitute work performed in a proceeding within the foreclosure action. Plaintiff relies on Fenneman v. Town of Gorham, which involved a claim for attorney's fees under the federal Individuals with

Disabilities Education Act. Fenneman v. Town of Gorham, 802 F. Supp. 542, 543 (D. Me. 1992). At issue in Fenneman was whether the plaintiffs could recover fees for work their attorney performed for a Pupil Evaluation Team (PET) meeting used to develop an Individualized Education Plan (IEP) for their disabled son. Id. at 544. The court interpreted the language of the statute, which authorizes attorney's fees "[i]n any action or proceeding brought under this subsection . . . ." Id. at 545 (quoting 20 U.S.C. § 1415(e)(4)(B)). The court determined that PET meetings, which are informal meetings used to develop IEPs by consensus if possible, were not part of the litigation process and therefore awarded no fees for work on the PET meeting. Id. at 545-46.

Attorney Bopp Stark's work on the loan modification is distinguishable from the PET meeting in Fenneman. Defendant pursued a loan modification as a defense to the foreclosure action, just as an attorney in any other case would pursue settlement options. See, e.g., Quint v. A.E. Staley Mfg. Co., 245 F. Supp. 2d 162, 177 (D. Me. 2003). Further, loan modification is an explicit part of the mediation process in foreclosure cases. See M.R. Civ. P. 93(g). Defendant's attorney was required to appear in person for mediation. M.R. Civ. P. 93(h)(1)(B). Finally, the court in Fenneman was concerned about encouraging adversarial conduct in the PET meetings, which are meant to be cooperative and informal. See Fenneman, 802 F. Supp. 2d at 545-46. By contrast, awarding fees for work performed on loan modifications may encourage settlement.

2. Legal Work

Plaintiff argues next that the work performed by Attorney Bopp Stark on the loan modification was not legal work and therefore not compensable. Plaintiff cites two cases to support its argument. First, in Raymond v. Raymond,

2

plaintiff correctly points out that the Superior Court distinguished between "lawyering" and "non-lawyering" time. Raymond v. Raymond, 1983 Me. Super. LEXIS 91, at *5 (May 26, 1983). By "non-lawyering" time, the court was referring to "periods when counsel are waiting around or spending time in their motor vehicles traveling to or from a particular location." Id. Second, in Adams v. Bowater, Inc., the court disallowed certain administrative hours billed by attorneys. Adams v. Bowater, Inc., 2004 WL 1572697, at *8 (D. Me. May 19, 2004.). The court concluded the claimed time was unreasonable and reduced the number of hours billed. Id.

Defendant's request for fees for legitimate work on a loan modification agreement is not the type of work the Raymond court disallowed. As discussed, defendant's attorney performed the loan modification work in an effort to settle the case and prevent foreclosure. As attorney's fees cases make clear, the proper inquiry is whether the billed time is reasonable. See Poussard v. Commercial Credit Plan, Inc. of Lewiston, 479 A.2d 881, 886 (Me. 1984) (noting "the difficulty in measuring hours reasonably expended in advancing the client's interests"); see also Adams, 2004 WL 1572697, at *8.

3. Duplicative Hours

Plaintiff argues finally that certain hours billed by defendant's attorneys are duplicative.[1] The fact that an attorney and a paralegal worked on the same matters does not preclude payment for that work. The case cited by plaintiff does not suggest otherwise. See Mowles v. Me. Comm'n on Governmental Ethics & Election Practices, 2009 WL 1747859, at *17 (Me. Super. April 10, 2009)

---

[1] The amount challenged totals $276.00.

3

(disallowing hours because there was "no need for two attorneys to attend oral argument when only one attorney has the opportunity to present").

4. Affidavits of Counsel

Neither Attorney D'Alessandro nor Attorney Bopp Stark has provided the nature of the fee agreement each had with defendant. Additional information, particularly from Attorney D'Alessandro, will be helpful to the determination of reasonable fees. See M.R. Prof. Conduct 1.5; Nadeau v. Nadeau, 2008 ME 147, ¶ 59, 957 A.2d 108; see Coutin v. Young and Rubicam P.R., Inc., 124 F.3d 331, 337 (1st Cir. 1997); D'Alessandro Aff.; Bopp Stark Aff. They will be given an opportunity to file amended affidavits.

The entry is

> Attorney D'Alessandro and Attorney Bopp Stark will submit revised affidavits that comply with the authorities cited above within 20 days of the date of this order. Plaintiff will have 10 days after receipt of the affidavits to file any response.

Date: 7.9.14

Nancy Mills
Justice, Superior Court

4

JOHN LEMIEUX ESQ
BENDETT & MCHUGH
30 DANFORTH ST

FRANK D'ALLESANDRO ESQ
PINE TREE LEGAL ASSISTANCE
PO BOX 547
PORTLAND ME 04112

ANDREA BOPP SPARK ESQ
MOLLEUR LAW OFFICE
419 ALFRED ST
BIDDEFORD ME 04005-3747



STATE OF MAINE
CUMBERLAND, ss

STATE OF MAINE
Cumberland, ss, Clerk's Office

JUN 1 1 2014

RECEIVED

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-11-606
NDM-CUM-06-11-14

U.S. BANK, N.A.,

Plaintiff

v.

PENNY LOWELL,

Defendant

ORDER ON PLAINTIFF'S
MOTION FOR FINDINGS OF
FACT AND CONCLUSIONS
OF LAW

At trial on 3/4/14, the court determined plaintiff's witness, Harrison Whittaker, was not qualified to testify. See M.R. Evid. 803(6). Plaintiff was unable to proceed with its proof. The court entered judgment in favor of defendant.[1] See Order dated 3/4/14. Before the court is the plaintiff's motion for findings of fact and conclusions of law.

FINDINGS OF FACT

Harrison Whittaker testified as follows. He works for Ocwen Loan Servicing as a loan analyst. He reviewed the business records to prepare for his testimony at trial. As part of his responsibilities, he has access to Ocwen's business records and has responsibility with other employees to maintain the business records.

U.S. Bank, N.A.'s (U.S. Bank) business records pertaining to the mortgage are part of Ocwen's business records. A process is followed to incorporate U.S. Bank's business records into Ocwen's business records once an agreement is entered to take on a loan. This involves a many-step process after the documents are received from a servicer or entity. Once received, the information is verified though the prior servicer's records. Ocwen makes sure all the information is accurate and correct

---

[1] The court mistakenly stated on the record that the matter would be dismissed.

before the information is entered in the system. Correct and verified information entered in Ocwen's system becomes Ocwen's business records. If for some reason incorrect or inconsistent information is seen on the documents, the documents are sent back and they are not included as part of Ocwen's business records.

With regard to financial records and payment histories, Ocwen goes through the prior servicer and makes sure all numbers match exactly and everything is accurate. With regard to documents, a similar process is used. Ocwen reviews them to make sure the copies are correct and match. Ocwen verifies all the information Ocwen can verify through the prior servicer to make sure everything entered in the system is accurate and correct.

With regard to letters mailed by prior servicers or entities Ocwen is servicer for, Ocwen makes sure the communication was made by the prior servicer to verify the letters were sent before entering the letters in Ocwen's system. If Ocwen has a copy of the letter in the system, that means the letter went through the boarding process and has been verified to have been sent. Ocwen as a servicer reviews the business practices of the entity that is boarding documents to Ocwen in terms of maintaining the documents. If Ocwen feels the entities are not doing their diligence, Ocwen would not enter an agreement with the entity. In response to leading questions, Mr. Whittekar responded affirmatively that he and Ocwen are familiar with the business practices of Litton and records boarded by Litton are relied upon by Ocwen.

In preparation for his testimony, Mr. Whittaker reviewed Ocwen's business records and documents related to the case, including payment history, mortgage, note, assignment of mortgage, demand letter, power of attorney, the acquisition of Litton by Ocwen, and the Security and Exchange Commission filing. Mr. Whittaker

2

answered "yes they are" in response to leading questions about whether the documents are kept in the normal course of business by Litton and to the extent the documents describe events, those events are recorded at or near the time the events occurred. Mr. Whittekar responded "correct" to a leading questions regarding the regular practice of Ocwen to maintain these records and to do so on a permanent basis and whether these records are the type of records Ocwen relies on in the day-to-day servicing of this particular loan.

Defense counsel conducted voir dire examination of Mr. Whittaker, who testified his duties include reviewing business records in preparation for testimony in foreclosure matters. He reviewed the business records for this case before trial. In his previous position at Ocwen, he was involved in witnessing the assignment for this loan.

He is not involved in maintaining Ocwen's business records. He is familiar with the records because he has done extensive training on Ocwen's practice of maintaining and holding records. He was not sure of the name of the person who did the training but it was through his boss. As part of the training he was told what the business practices are. The information he was given about business practices, his training, and his working for Ocwen for so long form the basis of his knowledge of Ocwen's business practices.

Regarding Litton's business practices, the information he was given during training, standard industry practices, and Mr. Whittaker's understanding of the agreement Ocwen entered with Litton form the basis of his knowledge. Ocwen would not have entered any type of agreement with Litton if it did not maintain business records properly. Because he never worked for Litton, he has no first-hand knowledge of Litton's practices for maintaining business records.

3

Plaintiff's counsel continued direct examination questioning. Mr. Whittaker received training in a multi-day training seminar. He received binders of documents, which contained Litton information. They went through the documents to show the similarity between Ocwen's practice of maintaining records and Litton's practice. In response to leading questions, Mr. Whittaker replied "yes" to whether he reviewed Litton's records and policies and whether he gained an understanding that Litton's business practices for maintaining business records are reliable. Litton's records were kept very similarly to the way Ocwen maintains and keeps its records.

The entire legal staff participates in the training. Training includes people who perform the same job as Mr. Whittaker, including people who create records, assignments, and affidavits. In response to a leading question regarding whether people who service the account transferred from Litton are involved in the training, Mr. Whittaker replied, "yes."

Mr. Whittaker did not discuss Bank of America, LaSalle Bank National Association, Mortgage Electronic Registration Systems, Inc., or New Century Mortgage Corporation. (See Compl. ¶¶ 1, 4-5.)

CONCLUSIONS OF LAW

No adequate foundation was provided to qualify Mr. Whittaker to testify regarding business practices and records of the various entities involved in this case. M.R. Evid. 803(6); Beneficial Me., Inc. v. Carter, 2011 ME 77, ¶¶ 15-16, 25 A.3d 96; HSBC Mortg. Servs., Inc. v. Murphy, 2011 ME 59, ¶ 10, 19 A.3d 815; see also Bank of Me. v. Hatch, 2012 ME 35, ¶ 8, 38 A.3d 1260; Bank of Am., N.A. v. Barr, 2010 ME 124, ¶ 19, 9 A.3d 816; In re Soriah B., 2010 ME 130, ¶ 13, 8 A.3d 1256; LDC Gen. Contracting v. LeBlanc, 2006 ME 106, ¶ 16, 907 A.2d 802; State v. Radley, 2002 ME

4

150, ¶ 15, 804 A.2d 1127; State v. Hanger, 691 A.2d 1191, 1194 (Me. 1996); Ne. Bank & Trust Co. v. Soley, 481 A.2d 1123, 1126 (Me. 1984). Based on his demeanor on the witness stand, his testimony, and plaintiff counsel's use of leading questions, the court concluded Mr. Whittaker was not a custodian or qualified witness. See M.R. Evid. 803(6). Absent a qualified witness, plaintiff could not satisfy the conditions required for a judgment of foreclosure. See Chase Home Fin., LLC v. Higgins, 2009 ME 136, ¶ 11, 985 A.2d 508.

Date: 6·11·14

Nancy Mills
Justice, Superior Court

RCVD JUN 11 '14 PM 2:44

5

JOHN LEMIEUX ESQ
BENDETT & MCHUGH
30 DANFORTH ST
SUITE 104
PORTLAND ME 04101

ANDREA BOPP STARK ESQ
419 ALFRED ST
BIDDEFORD ME 04005

FRANK D'ALLESANDRO ESQ
PINE TREE LEGAL ASSISTANCE
PO BOX 547
PORTLAND ME 04112