2011 ME 59

**HSBC MORTGAGE SERVICES, INC.**

v.

**Dana S. MURPHY et al.**

Supreme Judicial Court of Maine.

Argued: Sept. 15, 2010.

Decided: May 19, 2011.

---

John D. Clifford, IV, Esq. (orally), Josh-
ua Klein–Golden, Esq., Clifford & Golden,

PA, Lisbon Falls, ME, Thomas A. Cox, Esq., Portland, ME, for Dana S. and Robin L. Murphy.

John A. Doonan, Esq. (orally), Doonan, Graves & Longoria, LLC, Beverly, MA, for HSBC Mortgage Services, Inc.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

LEVY, J.

[¶ 1] Dana S. Murphy and Robin L. Murphy appeal from the entry of a summary judgment in the District Court (Lewiston, *Beliveau, J.*) in favor of HSBC Mortgage Services, Inc., on HSBC's complaint for foreclosure and sale pursuant to 14 M.R.S. §§ 6321–6325 (2010). The Murphys contend that the court erred in granting a summary judgment to HSBC because genuine issues of material fact exist with regard to whether (1) Mortgage Electronic Registration Systems, Inc. (MERS), the mortgagee of record as "nominee" for the original lender, Calusa Investments, Inc., effectuated a valid assignment of the mortgage to HSBC; (2) HSBC owns the note originally executed by the Murphys in favor of Calusa Investments; and (3) HSBC gave the Murphys notice of default and the right to cure in compliance with the terms of the mortgage. They also challenge the trustworthiness of the affidavits that support HSBC's statement of material facts. Because we determine that the affidavits submitted by HSBC are inherently untrustworthy and, therefore, do not establish the foundation for admission of the attached documents as business records pursuant to M.R. Evid. 803(6), we vacate the judgment without reaching the substantive issues raised.

## I. BACKGROUND

[¶ 2] On March 15, 2005, the Murphys executed and delivered a promissory note in the principal sum of $149,000 to Calusa Investments, a Virginia corporation.[1] As security for the note, the Murphys executed a mortgage on their residence in Auburn. The mortgage document signed by the Murphys identified Calusa as the "Lender," and MERS "as a nominee for Lender and Lender's successors and assigns." There is no mention of MERS in the promissory note that the Murphys executed in favor of Calusa. The language pertaining to MERS in the mortgage document is identical to the language we reviewed in *Mortgage Electronic Registration Systems, Inc. v. Saunders*, 2010 ME 79, ¶ 9, 2 A.3d 289, 294. On December 11, 2006, MERS executed a document purporting to assign the mortgage to HSBC. On August 24, 2009, MERS executed a document purporting to confirm the assignment of the note and mortgage to HSBC.

[¶ 3] In September 2008, after the Murphys failed to make certain payments on the note, HSBC filed a complaint for foreclosure in the District Court.[2] Several months later, HSBC moved for summary judgment. HSBC's statement of material facts was supported by record references to an affidavit of John Gonzalez, who was identified in the affidavit as a Foreclosure Manager at HSBC. In its statement of material facts, HSBC asserted that it was the "holder of the Note and Mortgage" by virtue of the assignment from MERS and through "endorsement and delivery of the aforesaid Note from Calusa." However,

1. Calusa is no longer in business; its charter was canceled in 2008.

2. HSBC originally filed a foreclosure complaint in the Superior Court on January 4, 2007. That complaint was dismissed without prejudice.

there was no endorsement on the face of, or appended to, the copy of the note attached to the Gonzalez affidavit or the complaint.

[¶ 4] Following a hearing, the court (*French, J.*) denied HSBC's motion. Although the court considered the MERS assignment sufficient to establish HSBC's ownership of the mortgage, the court found no record evidence that HSBC had been assigned the note. The court also refused to accept HSBC's statement of material fact that the Murphys had received proper notice of default and the right to cure, *see* 14 M.R.S. § 6111 (2009),[3] because the statement was not supported by a record reference to a sworn statement establishing that the purported notice was in fact sent to the Murphys. Thus, it did not comply with M.R. Civ. P. 56(e). The court ordered that the case be "set for pretrial after 45 days" in the event HSBC did not file a second motion for summary judgment.

[¶ 5] Seeking to address these shortcomings, HSBC filed a second motion for summary judgment together with a new statement of material facts. To establish that it held the Murphys' note, HSBC attached a copy of the note along with an allonge purporting to contain an endorsement to HSBC dated March 15, 2005, signed by an individual identified as Calusa's "Director of Operations." To establish notice, HSBC provided a letter from counsel mailed to the Murphys that purports to satisfy the notice requirements of 14 M.R.S. § 6111. The statement of material facts was supported by record references to an affidavit signed by Maria Vadney, described in the affidavit as Vice President of HSBC. In response to the Murphys' opposition to the motion, HSBC subsequently filed a supplemental statement of material facts supported by a second affidavit also signed by Maria Vadney.

[¶ 6] After hearing arguments on the motion, the court (*Beliveau, J.*) granted a summary judgment in HSBC's favor and entered a judgment of foreclosure and order for sale. Although it noted that HSBC could have discharged its summary judgment burden "with greater efficiency and clarity," the court determined that HSBC had satisfied the minimum foreclosure requirements set forth in *Chase Home Finance LLC v. Higgins,* 2009 ME 136, 985 A.2d 508, and that it was entitled to judgment as a matter of law.

[¶ 7] On appeal, the Murphys assert numerous errors that primarily concern HSBC's evidence of its ownership of the note and the mortgage, *see* 14 M.R.S. § 6321 (2009),[4] and evidence of whether it properly served notice of default and the right to cure.[5] They also contend that the

---

3. Title 14 M.R.S. § 6111 has since been amended. P.L.2009, ch. 476, §§ A–2; B–2 (emergency, effective Feb. 24, 2010) (codified at 14 M.R.S. § 6111 (2010)).

4. Title 14 M.R.S. § 6321 has since been amended, although those amendments are not relevant in the present case. P.L.2009, ch. 476, § B–5 (emergency, effective Feb. 24, 2010) (codified at 14 M.R.S. § 6321 (2010)).

5. The Murphys contend that the notice provided by HSBC failed to satisfy the requirements set forth in section twenty-two of the mortgage, applicable through 14 M.R.S. § 6111(5)(B) (2009). Specifically, they argue that notice was defective because it did not establish the date that notice was given; it was sent by an entity other than the "Lender;" it did not provide them with notice of the contractual conditions pursuant to which they could cure the default; it did not specify the contractual conditions for reinstatement; and it did not state that they had the right to assert defenses in a foreclosure action brought against them. In addition, they assert that HSBC did not establish the foundation for admission of the letter as a business record pursuant to M.R. Evid. 803(6).

affidavits filed by HSBC in support of the motion for summary judgment are inherently untrustworthy and do not establish the foundational requirements for admission of the attached documents under the business records exception to the hearsay rule, M.R. Evid. 803(6).

## II. DISCUSSION

 [¶ 8] We review the grant of a summary judgment de novo, "viewing the evidence in the light most favorable to the party against whom judgment has been entered to decide whether the parties' statements of material facts and the referenced record evidence reveal a genuine issue of material fact." *Salem Capital Grp., LLC v. Litchfield,* 2010 ME 49, ¶ 4, 997 A.2d 720, 721 (quotation marks omitted). In making this determination, we "consider only the portions of the record referred to, and the material facts set forth, in the [M.R. Civ. P. 56(h)] statements." *Id.* (quotation marks omitted).

[¶ 9] In residential mortgage foreclosure actions, certain minimum facts must be included in a mortgage holder's statement of material facts on summary judgment.[6] *See Higgins,* 2009 ME 136, ¶ 11, 985 A.2d at 510–11. We have repeatedly emphasized "the importance of applying summary judgment rules strictly in the context of residential mortgage foreclosures." *Camden Nat'l Bank v. Peterson,* 2008 ME 85, ¶ 29, 948 A.2d 1251, 1259. We have also repeatedly emphasized that a party's assertion of material facts must be supported by record references to evidence that is of a quality that would be admissible at trial. *See Higgins,* 2009 ME 136, ¶ 11, 985 A.2d at 510; *Levine v. R.B.K. Caly Corp.,* 2001 ME 77, ¶ 6, 770 A.2d 653, 656; *see also* M.R. Civ. P. 56(e). This qualitative requirement is particularly important in connection with mortgage

---

6. In *Chase Home Finance LLC v. Higgins,* 2009 ME 136, ¶ 11, 985 A.2d 508, 510–11, we stated that at a minimum, in support of any motion for summary judgment in a residential mortgage foreclosure action, the mortgage holder must include the following facts, supported by evidence of a quality that could be admissible at trial, in the statement of material facts:
 • the existence of the mortgage, including the book and page number of the mortgage, and an adequate description of the mortgaged premises, including the street address, if any;
 • properly presented proof of ownership of the mortgage note and the mortgage, including all assignments and endorsements of the note and the mortgage;
 • a breach of condition in the mortgage;
 • the amount due on the mortgage note, including any reasonable attorney fees and court costs;
 • the order of priority and any amounts that may be due to other parties in interest, including any public utility easements;
 • evidence of properly served notice of default and mortgagor's right to cure in compliance with statutory requirements;
 • after January 1, 2010, proof of completed mediation (or waiver or default of mediation), when required, pursuant to the statewide foreclosure mediation program rules; and
 • if the homeowner has not appeared in the proceeding, a statement, with a supporting affidavit, of whether or not the defendant is in military service in accordance with the Service-members Civil Relief Act.
 (Citations omitted). *See also Camden Nat'l Bank v. Peterson,* 2008 ME 85, ¶ 21, 948 A.2d 1251, 1257 (stating that a party seeking foreclosure must comply strictly with all steps required by statute). With the exception of the mediation requirement mandated by the Foreclosure Diversion Program, *see* 14 M.R.S. § 6321–A (2009); M.R. Civ. P. 93, because HSBC's summary judgment motion was filed on August 28, 2009, all of the requirements listed in *Higgins* are applicable to this case. *See Higgins,* 2009 ME 136, ¶ 11 n. 2, 985 A.2d at 511 (stating that the "new statutes and rules will ... apply to summary judgment motions filed after their effective dates, regardless of when the foreclosure action was commenced").

foreclosures where the affidavits submitted in support of summary judgment are commonly signed by individuals who claim to be custodians of the lender's business records. Thus, the information supplied by the affidavits is largely derivative because it is drawn from a business's records, and not from the affiant's personal observation of events.

[¶ 10] It is, perhaps, stating the obvious that an affidavit of a custodian of business records must demonstrate that the affiant meets the requirements of M.R. Evid. 803(6) [7] governing the admission of records of regularly conducted business. A business's records kept in the course of its regularly conducted business may be admissible notwithstanding the hearsay rule if the necessary foundation is established "by the testimony of the custodian or other qualified witness." M.R. Evid. 803(6). "A qualified witness is one who was intimately involved in the daily operation of the [business] and whose testimony showed the firsthand nature of his knowledge." *Bank of Am., N.A. v. Barr*, 2010 ME 124, ¶ 19, 9 A.3d 816, 821 (quotation marks omitted) (alteration in original). The foundation that the custodian or qualified witness must establish is four-fold:

(1) the record was made at or near the time of the events reflected in the record by, or from information transmitted by, a person with personal knowledge of the events recorded therein;

(2) the record was kept in the course of a regularly conducted business;

(3) it was the regular practice of the business to make records of the type involved; and

(4) no lack of trustworthiness is indicated from the source of information from which the record was made or the method or circumstances under which the record was prepared.

*Id.* ¶ 18, 9 A.3d at 820–821 (quoting *State v. Nelson*, 2010 ME 40, ¶ 9, 994 A.2d 808, 813).

[¶ 11] In evaluating trustworthiness for purposes of Rule 803(6), courts consider factors such as the existence of any motive or opportunity to create an inaccurate record, any delays in preparation of the record, the nature of the recorded information, "the systematic checking, regularity and continuity in maintaining the records[,] and the business'[s] reliance on them." *E.N. Nason, Inc. v. Land–Ho Dev. Corp.*, 403 A.2d 1173, 1179 (Me.1979). In the setting of summary judgment practice, any substantial errors or defects in the affidavit itself submitted in conjunction with the moving party's statement of material facts must also be considered to determine trustworthiness.

[¶ 12] In this case, the affidavits submitted by HSBC contain serious irregularities that make them inherently untrustworthy. The first Vadney affidavit,

---

7. M.R. Evid. 803(6) provides:

(6) Records of regularly conducted business. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business, and if it was the regular practice of that business to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 903(12) or a statute permitting certification, unless the source of information or the method or circumstances of preparation [indicates] lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

submitted by HSBC in conjunction with its second motion for summary judgment, identifies Vadney as "a Vice President of HSBC Mortgage Services, Inc.," and was dated and notarized on August 24, 2009. It asserts, among other things, that HSBC is the holder of the note and mortgage deed by virtue of an assignment dated December 11, 2006, and a confirmatory assignment of the note and mortgage dated August 24, 2009. Copies of both assignments are attached to the affidavit. The affidavit states that the confirmatory assignment was recorded in the Androscoggin County Registry of Deeds in Book 7775, Page 346. The copy of the confirmatory assignment attached to the Vadney affidavit indicates that it was also dated and notarized on August 24, 2009, and then recorded at the Registry of Deeds on August 27, 2009, three days after the date Vadney signed the affidavit swearing that it had been recorded as of August 24, 2009.

[¶ 13] In addition, the confirmatory assignment from MERS, as nominee for Calusa Investments, LLC, to HSBC was also signed by Vadney. It indicates that Vadney signed the confirmatory assignment on behalf of MERS in her capacity as its vice

president. The summary judgment record is otherwise silent as to whether on August 24, 2009, Maria Vadney was simultaneously an officer of both MERS, the assignor, and HSBC, the assignee, as the affidavit and the confirmatory assignment suggest.

[¶ 14] HSBC filed a second affidavit on October 1, 2009, signed by Maria Vadney on September 28, 2009, in support of its statement of supplemental facts filed in response to the Murphy's opposing statement of material facts. The affidavit contains a notary's jurat dated September 24, 2009, four days before Vadney signed the affidavit.

[¶ 15] The Murphys, noting the discrepancies in the two Vadney affidavits and further observing that in both, the signature and jurat appear on a page separate from the body of the affidavit, urge us to infer that the texts of the affidavits submitted by HSBC were attached to the signature and jurat pages after those pages were executed. The Murphys further contend that if this inference is correct, "the potential for fraud is great with all these affidavits and near certain with the August 24th Vadney affidavit." [8]

8. The New York Court of Appeals, having noted the recurring problem of lenders submitting unreliable affidavits and documents in residential foreclosure proceedings, has adopted a rule that requires attorneys representing lenders in foreclosure cases to personally affirm that they have taken reasonable steps to verify the accuracy of the papers filed with the court in support of the foreclosure. *See New Court Rule Says Attorneys Must Verify Foreclosure Papers*, New York Law Journal, http://www.law.com/jsp/nylj/PubArticleNY.jsp?id=1202473628860&slreturn=1&hbxlogin=1 (last visited May 18, 2011). There is no similar rule specific to residential foreclosures in effect in Maine. However, M.R. Civ. P. 11 requires that every pleading and motion of a party represented by an attorney be signed by the attorney, and that

*The signature of an attorney or party constitutes a representation by the signer that the signer has read the pleading or motion; that to the best of the signer's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay.* If a pleading or motion is not signed, it shall not be accepted for filing. If a pleading or motion is signed with intent to defeat the purpose of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, upon a represented party, or upon both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading or motion, including a reasonable attorney's fee.

M.R. Civ. P. 11(a) (emphasis added).

[¶ 16] In support of their claim that the affidavits are insufficiently trustworthy, the Murphys also point to the affidavit of John Gonzalez, filed in conjunction with HSBC's first summary judgment motion, which was denied by the District Court.[9] That affidavit was dated and notarized on September 10, 2008. It reports, among other things, the principal balance, accrued interest, unpaid charges, and escrow balance due under the terms of the mortgage as of January 29, 2009. Thus, the Gonzalez affidavit provides information, vital to the entry of a judgment, that was not available until more than four months after the affidavit was sworn to by Gonzalez.

[¶ 17] As an appellate court, and in view of the limited record before us, we do not adopt as fact the inference urged by the Murphys. Nor can we conclude on this record that a fraud has been committed on the Court, or determine whether the affidavits submitted by HSBC were made in bad faith so that an award of expenses pursuant to Rule 11(a)[10] or Rule 56(g)[11] is warranted. Nonetheless, we readily conclude that the Vadney affidavits submitted in support of HSBC's second motion for summary judgment, like the Gonzalez affidavit submitted before them, are inherently untrustworthy and do not satisfy the foundational requirements of M.R. Evid. 803(6). Because the information contained in the affidavits, and the business records attached to them, are not of a quality that would be admissible at trial, the court erred by granting a summary judgment.

[¶ 18] We vacate the judgment and remand with the direction that this matter proceed to discovery, if sought by either party, and to trial, if necessary, but that HSBC not be permitted to file any additional Rule 56 summary judgment motions.[12] On remand, the court should determine, pursuant to either or both M.R.

9. The Gonzalez affidavit was submitted in conjunction with the first summary judgment motion filed in this case. We are mindful that we are considering a different summary judgment motion at this time, and that we are generally constrained from searching the record beyond the statements of material fact submitted in support of or opposition to a party's motion for summary judgment. *See Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 9, 770 A.2d 653, 656. However, because the credibility and admissibility of the affidavits filed in support of the pending motion have been called into question, and because the Murphys have called the defects in the Gonzalez affidavit to our attention in their brief as part of an apparent pattern of untrustworthiness, we include the Gonzalez affidavit in our review when considering whether such a pattern exists. *See Ricci v. Applebee's Ne., Inc.*, 297 F.Supp.2d 311, 321 (D.Me.2003) (considering evidence not identified in statements of material fact when, having become aware of such evidence, it would be an injustice to ignore it).

10. *See* note 8.

11. M.R. Civ. P. 56(g) provides:

Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney fees, and any offending party or attorney may be adjudged guilty of contempt.

12. Although we do not decide the merits of the Murphys' contention that HSBC is not entitled to a summary judgment because it failed to produce the original promissory note, *see* M.R. Civ. P. 56(j); 14 M.R.S. § 6321 (2009), if the defendants challenge the accuracy of a copy that has been produced at trial, the plaintiff should be prepared to produce the original or its electronic equivalent, or provide a valid excuse for its non-production. *See* M.R. Evid. 1002, 1004; *see also* Field & Murray, Maine Evidence § 1004.1 at 567–68 (6th ed.2007).

Civ. P. 11(a) and 56(g), whether to award the Murphys their expenses, including reasonable attorney fees, incurred defending against HSBC's two motions for summary judgment before the court and on appeal.

The entry is:

Judgment vacated. Remanded to the District Court for further proceedings consistent with this opinion.