ENTERED NOV 0 7 2014

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-10-597

NM-CUM-D5-10-14

OCWEN LOAN SERVICING,
LLC,

      Plaintiff

      v.

JOEL C. RICHARDSON,

      Defendant

JUDGMENT

STATE OF MAINE
Cumberland Attorney's Office

RECEIVED

## Background

Trial was held on the complaint for judgment of foreclosure. The court has considered the testimony, exhibits,[1] briefs, and arguments of counsel. For the following reasons, judgment is granted in favor of defendant and against plaintiff on the plaintiff's complaint.

## Motion to Substitute

OneWest Bank, FSB's (OneWest) motion pursuant to M.R. Civ. P. 25(c) to substitute Ocwen Loan Servicing, LLC (Ocwen) for OneWest as party plaintiff was argued before trial. Defendant objected to the motion, although defendant did not object to the admission in evidence of plaintiff's exhibit L or to calling Harrison Whittaker as a witness. Defendant argued the substitution of the party plaintiff could affect defendant's waiver argument. Plaintiff agreed the substitution would not prejudice defendant's waiver argument and plaintiff has not argued that substitution of plaintiff affects the waiver issue.

As discussed below, it is undisputed plaintiff accepted funds in 2012 while this

---

[1] Plaintiff's exhibits A, D, F, G, I, J, K, L and defendant's exhibits 1, 3 were admitted in evidence.

action was pending. The parties focus primarily on whether plaintiff waived its right to a judgment of foreclosure by accepting those funds. Plaintiff argues that paragraph 24 of the mortgage constitutes a signed agreement that allowed plaintiff to accept payments without waiving its right to foreclose. 14 M.R.S. § 6321; Pl.'s Ex. F, ¶ 24. Plaintiff argues further the funds accepted were not applied to the unpaid principal balance.

Section 6321 provides:

> The acceptance, before the expiration of the right of redemption and after the commencement of foreclosure proceedings of any mortgage of real property, of anything of value to be applied on or to the mortgage indebtedness by the mortgagee or any person holding under the mortgagee constitutes a waiver of the foreclosure unless an agreement to the contrary in writing is signed by the person from whom the payment is accepted or unless the bank returns the payment to the mortgagor within 10 days of receipt.

14 M.R.S. § 6321 (2013).

Defendant argues he signed the mortgage before this law went into effect and the law does not apply retroactively to his mortgage. This provision, however, existed prior to its inclusion in 14 M.R.S. § 6321 in a different section of Title 14. See P.L. 1993 ch. 321, § 1 (amending 14 M.R.S. § 6204); P.L. 2007 ch. 391, §§ 4, 9 (repealing 14 M.R.S. § 6204 and amending 14 M.R.S. § 6321). The same provision was, therefore, in effect when defendant signed his mortgage. By agreeing to paragraph 24 of the mortgage, defendant waived his right to assert the waiver defense set forth in 14 M.R.S. § 6321. See In re Jackson Brook Inst., Inc. 226 B.R. 487, 500-01 (Bankr. D. Me. 1998) (finding that defendant "waived its right to assert the defense set forth in Section 6204 and has in essence, agreed in writing that such payments do not constitute a waiver as contemplated by the statute").

Pursuant to Rule 25(c), OneWest's motion to substitute Ocwen as party plaintiff is granted over objection. M.R. Civ. P. 25(c).

2

Findings

Charles (Boomer) Bean has been employed by OneWest since 3/19/09 and has been an assistant vice president at OneWest since March 2010. His job involves trying to prevent foreclosures and to modify loans if appropriate. If that effort fails, he is involved in litigation depositions, mediations, and trials.

OneWest took over for IndyMac Bank (IndyMac), whose assets and servicing rights were sold by FDIC when IndyMac failed in July 2008. Mr. Bean previously worked for IndyMac Mortgage Services, a division of OneWest, beginning in April 2005. He worked for IndyMac Federal until 3/18/09. He has never worked for Ocwen.

Mr. Bean did not testify regarding American Residential Mortgage, Home Loan Servicing, or IndyMac's record keeping practices. With regard to his qualification to testify regarding OneWest's business records, Mr. Bean testified as follows, frequently in response to leading questions. He was familiar with OneWest's business practices and the manner in which the business records are created and maintained. He receives information from all departments and from knowledgeable people. When a payment is received by the cashier's department, the payment amount is coded against the loan amount and credited to the account the way the payment should be credited. The record is created by the person who handles the payment at or near the time the payment is received, and entered in the computer system and retained. Any credentialed employee has access to the computer system. The records are maintained on a permanent basis and kept in the computer system. He relies on the business records.[2]

Mr. Bean is familiar with the account at issue and reviewed the records by himself

---

[2] Defendant objected only to the admission in evidence of plaintiff's exhibits E, G, H, and M. Exhibits E (screen shot from servicing system), H (loan transfer history), and M (screen shot from business records system) were not admitted. Plaintiff's exhibit G (assignment of mortgage) was admitted pursuant to M.R. Evid. 902. As discussed below, based on the foundation provided, the witnesses were not qualified to testify regarding the entities' business records. M.R. Evid. 803(6); HSBC Mortg. Servs., Inc. v. Murphy, 2011 ME 59, ¶ 10, 19 A.3d 815.

and with counsel. Correspondence is sent based on the activity of the loan. If there is verbal correspondence, the customer service department makes notes of the call in the computer system.

The original note in the original principal balance amount of $385,000.00 for the property at issue, 23 Noyes Street in Portland, Maine, was dated 1/22/07. The lender was American Residential Mortgage and the borrower was defendant. (Pl.'s Ex. D.) Mr. Bean is familiar with allonges and endorsements. The note has two endorsements: one to IndyMac without recourse signed by American Residential Mortgage and one in blank signed by IndyMac. On cross-examination, he testified there is no way to determine from the business records the date of that assignment. Mr. Bean was unaware of an assignment from IndyMac to OneWest, other than the sale of service rights. On redirect, he testified that the note was transferred to IndyMac on 3/13/07 and to OneWest on 3/19/09.

Gina Schroll, an employee of plaintiff's law firm, requested the original note in anticipation of trial several times. She did not know if a third party sent the note. She first received the original note on 9/9/10. According to Mr. Bean, the original note was maintained in a third-party vault in Pasadena, California by "one of our vendors."

The original note was presented to the court for inspection. According to Mr. Bean, plaintiff's exhibit D is an accurate copy of the original note except for the redaction of the loan numbers.

The original mortgage for the property at issue at 23 Noyes Street in Portland, Maine was signed by defendant and dated 1/22/07. (Pl.'s Ex. F.) The mortgage refers to the note dated 1/22/07 with defendant as borrower and American Residential Mortgage as lender. Mortgage Electronic Registration Systems, Inc. (MERS) is listed as mortgagee for purposes of recording the mortgage and as nominee for the lender and the lender's

4

successors and assigns. The mortgage was recorded in the Cumberland County Registry of Deeds, book 24780, page 155. The original recorded mortgage was presented to the court for inspection. According to Mr. Bean, plaintiff's exhibit F is an accurate copy of the original mortgage.

Paragraph five of the mortgage outlines the provisions for property insurance, which the borrower is required to maintain. If there is a loss and the bank receives funds, the funds are returned to the borrower if the loan is current. If the loan is in default, the bank retains the funds and monitors the claims and the rehabilitation of the property. The funds are held in a restricted escrow account. Paragraph 22 outlines the lender's rights if the borrower fails to keeps his promises and agreements, including the lender's right to recover costs and attorney's fees in any lawsuit for foreclosure. Paragraph 24 of the mortgage provides:

> **Payment During Foreclosure.** I agree that Lender may accept rents from the property, hazard insurance proceeds, condemnation awards, and any other monies produced by the property or paid by me, even though the lender has demanded immediate payment in full and begun foreclosure and sale under Section 22 above. Lender may use such monies to pay off any part of the Sums Secured without affecting Lender's right to continue foreclosure and sale.

(Pl.'s Ex. F, ¶ 24.)

On direct examination, Mr. Bean testified that plaintiff's exhibit G is an assignment dated 7/27/10 by MERS as nominee for American Residential Mortgage to OneWest of the 1/22/07 mortgage from defendant. The assignment was recorded in the Cumberland County Registry of Deeds, book 28010, page 239. Mr. Bean testified on cross-examination that he had never seen an assignment of the mortgage from IndyMac to OneWest. He testified further that plaintiff's exhibit G was prepared by "our

5

attorney" and that he did not recall seeing the document in the imaging system.[3] He was not involved in creating the document.

Mr. Bean testified on direct examination that plaintiff's exhibit H was printed from the loan servicing system. He stated the exhibit is a loan transfer history, which tracks loan transfers from one servicer or investor to another. He stated the exhibit is part of the business records for defendant's loan. He reviewed the exhibit, which indicates Fannie Mae was the investor at the commencement of the action. IndyMac held the original note, which was endorsed in blank.

On cross-examination, Mr. Bean testified that securities marketing is not his specialty, he is not involved in any aspect of that work, and he has no knowledge or understanding of that aspect of the business. Notwithstanding that disclaimer, he stated no assignment was needed for Fannie Mae to own a loan and no assignment existed.

On redirect examination, Mr. Bean testified he is familiar with OneWest's documentation of the transfer of loans as follows. The transfer of a loan from one entity to another is documented so OneWest will have a history and will know who owns the property at any given time. He testified that the person who created the business record would know and because plaintiff's exhibit H is a business record, as long as he can read the document and understand what the document tells him, that is sufficient for him to obtain his own knowledge of who owns the loan at any certain time. Mr. Bean testified he is familiar with business practices related to plaintiff's exhibit H because just like an airplane flies, he does not want to know, he just knows it happens.

Next, in response to a series of leading questions, Mr. Bean agreed the document was reliable because it was created by people with personal knowledge of the

---

[3] Plaintiff argued this document is admissible pursuant to M.R. Evid. 902. Plaintiff's exhibit G was admitted over defendant's objection. There is a distinction, however, between admissibility of a document and weight to be given to the document once admitted, especially considering Mr. Bean's testimony about the exhibit.

transaction, that the history was created by a person with knowledge at or near the time of the transaction, that the document is maintained in the business record system, that he is familiar with OneWest's practices and records, and that his understanding is that the loan was sold to Fannie Mae. He stated that by reading the document, which has dates and lists transfer information, he understands there was a sale to Fannie Mae on 3/13/07 and subsequently repurchased from Fannie Mae in August 2010. He did not understand what "repur" in July 2010 meant on the document. He testified that based on his understanding of the industry, an industry about which he stated he had no knowledge or understanding on cross-examination, the loan would have been purchased back from Fannie Mae on 7/26/10.

On voir dire examination, Mr. Bean testified again that on 7/27/10, Fannie Mae owned the loan and he did not know what was repurchased. He stated plaintiff's exhibit H was not part of his review of the file, and he did "not really understand all the information" on the document, and he did not "ascertain" the document.[4]

On direct examination, Mr. Bean testified that Exhibit I shows the full history of payments, credits, and debits for the borrower. The payment history begins in March 2007, when IndyMac was the servicer. When IndyMac failed in July 2008, the FDIC operated IndyMac until March 18, 2009, when OneWest purchased certain assets and service rights from the FDIC and operated as IndyMac, a division of OneWest. The note was transferred to IndyMac. In September 2010 IndyMac Mortgage Services was a division of OneWest, which held the note at that time.

One payment of $178.37 was received by OneWest on 3/6/12 and was applied to repayment of an escrow advance. (Def.'s Ex. 3.) Page six of plaintiff's exhibit I shows that a credit of $178.37 was applied to the escrow balance. (Pl.'s Ex. I.) Mr. Bean testified

---

[4] Plaintiff's exhibit H was not admitted in evidence.

7

the funds were not applied to the principal balance.

According to Mr. Bean, on 10/24/11, defendant reported a loss involving the property. A check was sent on 10/31/11, was transferred and endorsed by defendant, and received by OneWest on 3/7/12. An insurance loss draft deposit of $4799.11 was received and deposited in a restricted escrow account because defendant was in default of the loan. (Def.'s Ex. 1.) The funds were not held in a suspense fund because that fund is for funds received but with no explanation. OneWest intended to hold the funds indefinitely. OneWest monitored and tried to resolve this loss but discussions between OneWest and defendant were not productive. Insurance funds are usually released to pay for repairs but no documents were submitted to OneWest. The insurance funds were not disbursed in this case and have not yet been applied to the unpaid principal balance. Mr. Bean's testimony regarding these transactions was in response to frequent leading questions and based on his familiarity with the transactions and his review of the records.

The loan fell into default in March 2010 and the default was never cured. Based on his review of the business records, Mr. Bean testified that two notice of default or breach letters dated 5/12/10 were mailed to defendant at the property address and a mailing address. (Pl.'s Ex. J.) "Home Loan Servicing" in Michigan is listed on the letterhead. (See Pl.'s Ex. F, ¶¶ D, 22.) These letters dated 5/12/10 predate the 7/27/10 assignment of the mortgage to OneWest. Based on Mr. Bean's review of the records, he testified the default was not cured after the letters were mailed.

Plaintiff's exhibit K shows plaintiff's payout calculation as of 7/9/13, with interest through 7/15/13. The computer system generates this report, which includes credits, payments, and fees to maintain the loan. Escrow advances are amounts advanced to protect the property, such as taxes and insurance, and are added to the

8

payoff amount for the loan. A suspense balance and a restricted escrow are credits until actually deducted.

Mr. Bean testified that the accurate amount due to pay off the loan as of 7/15/13 was $482,407.09. With regard to his testimony about the payoff amount, Mr. Bean stated that his testimony was based on the category on the document that says total to payoff. He does not do the math. He looks at the sheet and looks at the dollar amount. Plaintiff's exhibit K is a report printed from the computer system. He did not know the name of the person who hit print. The computer does the math; sometimes Mr. Bean checks the math to see if it is correct.

He agreed that total amount due includes a credit for $4,799.11. The $178.37 was probably added to the suspense balance and is accounted for in the payoff amount. Mr. Bean testified that a judgment in a specific amount was sought. Although plaintiff's exhibit K was used to assist in determining the amount of judgment sought, the amount is not reflected in plaintiff's exhibit K, according to Mr. Bean.

Mr. Bean testified that OneWest sold the servicing rights for the loan to Ocwen on 9/1/13 and that OneWest no longer has an interest in the loan. (Pl.'s Ex. L.) Harrison Whittaker is a loan analyst at Ocwen. He "was familiar" with Ocwen's business practices based on his review of the records in preparation for his testimony and from his training. He was familiar with the account at issue.

Mr. Whittaker stated Ocwen was the servicer for the loan and said he "did not believe" Ocwen had an interest in the loan. He testified that when the servicing rights were transferred to Ocwen from OneWest, the previous servicer sent any and all documents and records it had, including notes, mortgages, default letters, welcome letters sent to borrowers, payment history, and information showing when Ocwen acquired the loans. The Ocwen document team reviewed the documents, entered them

in the computer and "quality control is done." The team made sure the information was accurate, matched what was sent to Ocwen, and entered the information into the system. The team makes sure all copies are legible and "things of that nature." He testified it is common in the service industry to rely on the records of prior servicers when acquiring servicing rights. In his review of this account, Mr. Whittaker relied on the "prior records."

Mr. Whittaker was "familiar" with the note, which was transferred to Ocwen, and stated that plaintiff's exhibit D "appears to be a copy of the note." (Pl.'s Ex. D.) In response to a leading question on direct examination, "When Ocwen acquired the loan, did Ocwen acquire an interest in enforcing the note," Mr. Whittaker testified, "yes."

In response to a leading question on direct examination, "based on your review of documents from OneWest to Ocwen, is plaintiff's exhibit F and accurate representation of the mortgage to defendant," Mr. Whittaker testified, "yes, it matches what we have in our records." With regard to the assignment of the mortgage, Mr. Whittaker testified the mortgage was assigned because Ocwen took over from OneWest to process the loan. In response to the leading question on direct examination whether the assignment related to the mortgage at issue, Mr. Whittaker testified, "yes."

Mr. Whittaker was familiar with plaintiff's exhibit M, a screen shot from the business records system that is kept. In response to the question on direct examination about whether he was familiar with the manner in which business records are created with regard to loan information, Mr. Whittaker testified he did know. He testified that once a servicing purchase agreement is made, the information was sent and entered in the system. A team makes sure the information matches the previous servicer's records, and all quality control is done on all steps of the process to ensure accuracy of all of the numbers. When asked to speak to the process related to confirming information

10

regarding the investor of the loan, Mr. Whittaker testified that when the loan comes in and information is received, if there is a discrepancy with the investor, they stop and figure it out in order to be 100% accurate before information is entered into the system.

After plaintiff's exhibit M was offered, voir dire examination was conducted by defense counsel. Mr. Whittaker testified he has been a loan analyst for four months; his job is to testify and he has testified four times. He worked in the Ocwen affidavits department previously. He stated he has intimate knowledge about how the business works and how information is gathered and verified. He could not testify about how OneWest verified information. When purchasing servicing rights, there is a stipulation that information needs to be accurate and Ocwen tries to verify information. He testified that Ocwen purchased the servicing rights from OneWest and he did not know how OneWest determined who the investor is. When asked if he had knowledge about how the information on page two of plaintiff's exhibit M was gathered, he testified that information is sent from OneWest, they make sure it is accurate and matches what is in the documents, and enter the information into the system. They rely on OneWest's information and he did not believe any calculation was done.

As direct examination continued, in response to a leading question regarding whether Ocwen verifies from the prior entity the investor in the loan, Mr. Whittaker responded, "yes." He then stated that in some cases the investor would be verified but he did not know whether that was done in this case.[5]

Mr. Whittaker testified that exhibit N is a transaction history that includes the original balance, current balance, escrow balance, and "different financial things." He testified that since Ocwen took over, no payments had been made and the default was

---

[5] Plaintiff's exhibit M was not admitted in evidence.

11

not cured.

After plaintiff's exhibit N was offered, voir dire examination was conducted by defense counsel. Mr. Whittaker testified that the document was created through the computer system and the figures were provided by the prior servicer. The figures were verified before they were entered in the computer system and obviously they were entered because he had a copy in front of him. He then stated that this document was Ocwen's record and not from the prior servicer. He did not know what the fees that appear on exhibit N would come from. He believed they would all cancel each other but he "did not know for a fact" if they canceled out. He stated that the document did not show what fees are for what and he was not quite sure.[6]

Conclusions

Plaintiff has not satisfied the conditions required for a judgment of foreclosure in this case. See Chase Home Fin., LLC v. Higgins, 2009 ME 136, ¶ 11, 985 A.2d 508. Contrary to plaintiff's argument in its briefs, no adequate foundation was provided to qualify Mr. Bean or Mr. Whittaker to testify regarding business practices and records of the various entities involved in this case. M.R. Evid. 803(6); Beneficial Me., Inc. v. Carter, 2011 ME 77, ¶¶ 15-16, 25 A.3d 96; HSBC Mortg. Servs., Inc. v. Murphy, 2011 ME 59, ¶ 10, 19 A.3d 815; see also Bank of Me. v. Hatch, 2012 ME 35, ¶ 8, 38 A.3d 1260; Bank of Am., N.A. v. Barr, 2010 ME 124, ¶ 19, 9 A.3d 816; In re Soriah B., 2010 ME 130, ¶ 13, 8 A.3d 1256; LDC Gen. Contracting v. LeBlanc, 2006 ME 106, ¶ 16, 907 A.2d 802; State v. Radley, 2002 ME 150, ¶ 15, 804 A.2d 1127; State v. Hanger, 691 A.2d 1191, 1194 (Me. 1996); Ne. Bank & Trust Co. v. Soley, 481 A.2d 1123, 1126 (Me. 1984). Based on their demeanor on the witness stand, their testimony, and the continual use of leading questions, the court has no confidence they have sufficient knowledge about how and when the records were

---

[6] Plaintiff's exhibit N was not admitted into evidence.

12

made or the regular business practices of American Residential Mortgage, IndyMac Bank, OneWest, or Ocwen. The court accords little weight to their testimony or to several of the exhibits admitted in evidence. In particular, on this record, plaintiff has failed to prove ownership of the note or mortgage or the amount due on the note. <u>See</u> <u>Chase Home Fin., LLC</u>, 2009 ME 136, ¶ 11, 985 A.2d 508; <u>see</u> <u>also</u> <u>Bank of Am., N.A. v.</u> <u>Cloutier</u>, 2013 ME 17, ¶ 16, 61 A.3d 1242.

The entry is

> Judgment is entered in favor of the Defendant, Joël C. Richardson, and against the Plaintiff, Ocwen Loan Servicing, LLC, on the Plaintiff's Complaint.

Dated: May 10, 2014

Nancy Mills
Justice, Superior Court

13

5/10/2014

ELIZABETH CROWE ESQ
BENDETT & MCHUGH
270 FARMINGTON AVE
SUITE 151
FARMINGTON CT 06032

MARK KEARNS ESQ
MARK RANDALL ESQ
PO BOX 17915
PORTLAND ME 04112